UNITED STATES of America, Appellee

v.

Joine Hose MAEJIA, a/k/a Luis Fernando Franco Foronda, a/k/a "J.J." a/k/a John Doe and Rhonda Jeanne Meier, Appellant.

No. 90–1919.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 7, 1991.

Decided March 22, 1991.

Joseph R. Lopez, Chicago, Ill., for appellant.

William C. Adair, Little Rock, Ark., for appellee.

Before.JOHN R. GIBSON and BOWMAN, Circuit Judges, and SACHS,* District Judge.

BOWMAN, Circuit Judge.

Joine Hose Maejia appeals from a judgment of conviction following a jury trial[1] in which he was found guilty of one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1988), one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b) (1988), and one count of possession of a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c)(1) (1988).

For reversal of his conviction Maejia argues that: (1) there was insufficient evidence to establish his participation in a conspiracy; (2) inadmissable hearsay was admitted under the coconspirator exception to the hearsay rule; (3) failure of the government to disclose certain documents prior to trial violated the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (4) incriminating evidence produced at trial was discovered as a direct result of a pretextual automobile stop in violation of the Fourth Amendment; and (5) a defective search warrant led to the discovery of 6.6 pounds of cocaine. He also attacks his sentence, arguing that the District Court incorrectly characterized him as an "organizer," resulting in an unwarranted two-point enhancement under the sentencing guidelines. We affirm the convictions and the sentence.

## I.

On January 9, 1990, officers of the West Memphis, Arkansas, Police Department were called by Memphis, Tennessee, police officers and told of potential drug trafficking in West Memphis. The Memphis, Tennessee, police had interrogated one Laracuente at the Memphis Airport. Laracuente was found carrying a one-way ticket to Chicago and $2,000 hidden in his boots. He explained that he had assisted Maejia and a woman named Meier in bringing a gold Mazda sports car and red pick-up truck to the West Memphis area. Laracuente said that the money was payment for driving the pick-up truck to the Memphis area from Illinois while Maejia and Meier followed in the gold Mazda. He informed the officers that Maejia and Meier could be found at the Super 8 Motel in West Memphis.

Officers Crabtree, Sudbury, and Miller of the Narcotics Squad of the West Memphis Criminal Investigation Division drove to the Super 8 Motel in an unmarked police car. The manager of the Super 8 Motel

---

* The HONORABLE HOWARD F. SACHS, Chief United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Elsijane T. Roy, Senior United States District Judge for the Eastern District of Arkansas, presiding.

informed the officers that she had called the police earlier because she thought she had observed a drug transaction involving the suspects. During the conversation with the manager, the officers observed Maejia and Meier leave the parking lot of the Super 8 Motel in the gold Mazda. Officers Crabtree and Miller followed the Mazda in their unmarked police car.

Officer Miller radioed a request for another officer to assist in the surveillance. Officer Leggett was on patrol in the area in his marked police car. Officer Miller informed Leggett that the gold Mazda had allegedly been used in the transportation of drugs into the area. As Officer Leggett followed the gold Mazda, he observed the car veer from the center line to the edge of the road and back approximately four times in less than one mile. Officer Leggett concluded that this erratic driving was not normal and suspected that the driver was under the influence of either alcohol or drugs. He decided to stop the car and investigate his suspicion. As Officer Leggett turned on his flashers, the gold Mazda pulled into the parking lot of a Motel 6. Officer Leggett pulled up facing the driver's side of the gold Mazda while Officers Crabtree and Miller pulled in on the passenger side.

The driver, Meier, got out of the car and approached Officer Leggett. At the same time, Officer Crabtree directed Maejia to exit the car. Maejia got out of the car with both hands in his jacket pockets. When instructed to remove his hands from his pockets, Maejia did not respond. Officer Crabtree then approached Maejia and pulled Maejia's hands out of his pockets. Some paper items fell to the ground including a "pyramid paper," which is a folded piece of paper that is commonly used to hold drugs. One of the papers contained Valium tablets, a schedule IV controlled substance.

Officer Miller asked Meier for permission to search the car (which in fact was hers) and she consented. The search revealed only a suitcase. When asked, Meier informed the officers that it was not her suitcase. Maejia indicated that it was not his suitcase either. The officers then had a police dog, trained to detect narcotics, brought to the scene. The dog did not react to the interior of the car, but when shown the suitcase the dog immediately alerted. The suitcase was opened and $7,950 in currency, a cocked 9mm pistol with 16 rounds, and a loaded .25 caliber pistol were discovered. Maejia was arrested and later charged with the unlawful possession of a controlled substance. Meier was not charged and was released from custody.

Soon after Meier's release, the police learned from a confidential informant that she had contacted a boyfriend in Milwaukee and had apprised him that Maejia had been apprehended and that the police had not discovered the cocaine in the red pickup truck, which was parked at the Motel 6. Meier sought to persuade the man to help transport the cocaine to Milwaukee by offering to split the profits from its sale. Armed with this information, the police arrested Meier.

The next day the trained police dog was again brought to the Motel 6. The dog alerted on a tool box connected to the bed of the red pick-up truck. A search warrant was issued and executed, with the police discovering three kilos of cocaine in the tool box. The police then impounded the truck. During the ensuing inventory search, receipts bearing Maejia's signature for repairs to the truck were found in its glove compartment. The keys to the truck later were discovered in a small hole in the wall of the jail cell to which Maejia was taken immediately after his arrest.

## II.

Maejia's first argument is that the evidence laid before the jury was insufficient to establish a conspiracy. His conviction must be upheld if, viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, we conclude that a reasonable fact-finder could have found guilt beyond a reasonable doubt. *United States v. Marin–Cifuentes*, 866 F.2d 988, 992 (8th Cir.1989).

■ To convict Maejia of conspiracy under 21 U.S.C. § 846 (1988), the government had to prove that he entered into an agreement with at least one other person and that the agreement had as its objective a violation of the law. *Henderson v. United States*, 815 F.2d 1189, 1191 (8th Cir. 1987). Section 846 does not require proof of an overt act in furtherance of the conspiracy. *United States v. Covos*, 872 F.2d 805, 810 (8th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989). "The independent evidence showing a conspiracy may be direct or totally circumstantial." *United States v. Jankowski*, 713 F.2d 394, 396 (8th Cir.1983), *cert. denied,* 464 U.S. 1051, 104 S.Ct. 732, 79 L.Ed.2d 192 (1984). "The nature of the offense of conspiracy with its necessary aspect of secrecy often requires that the agreement be implied from the surrounding circumstances." *United States v. Gooden*, 892 F.2d 725, 729 (8th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990).

■ Meier testified that she had known Maejia for two and a half years and had taken drugs with him. She testified that Maejia called her at home in Milwaukee and asked her to go out of town with him. She met Maejia and Laracuente at the "Oasis" truck stop near the Illinois–Wisconsin border. There, she agreed to drive Maejia to Memphis, Tennessee (a journey of over five hundred miles), while Laracuente followed in Maejia's truck.

Initially, Meier denied any knowledge of the cocaine in the truck. In her testimony, however, Meier admitted calling a boyfriend in Milwaukee and telling him that the police had arrested Maejia but that they had failed to discover the cocaine in the red pick-up truck. She asked her friend to come to Memphis to help her transport the cocaine to Milwaukee and offered to split the profits from its sale. Based on her own statements, it is clear that Meier knew of the cocaine in the truck.

Meier also testified that prior to Maejia's arrest, she and Maejia went to a parking lot in Memphis where a man gave Maejia $7950 in cash. She testified that after Maejia's arrest, she tried to contact another man who owed Maejia eleven thousand dollars so that she could collect the money, hire an attorney for Maejia, and return to her home in Milwaukee. Meier's testimony clearly indicates that Meier knew of Maejia's extensive involvement with drug trafficking. She not only knew of the cocaine in the truck, but also agreed to provide Maejia the means to transport the cocaine without his being directly connected to it. It readily can be inferred that Maejia and Meier were well aware that if trouble ensued between Laracuente and law enforcement, they could simply drive on in the safety of Meier's car and thus avoid arrest.

The Super 8 Motel receipts and clerk's testimony indicated that when the trio arrived late in the evening Maejia, using the pseudonym Ramiro Gastron, rented two motel rooms, one for Maejia and Meier and the other for Laracuente. That evening, Maejia had Meier go to Laracuente's room to get the keys to the truck. The next day, Maejia had Laracuente move the truck to another motel and he paid Laracuente $2000 in cash for his two days of services. Maejia and Meier then drove Laracuente to the airport so that he could fly back to Illinois.

Maejia was linked to the cocaine found in the truck by the testimony of Meier and the keys to the truck found in Maejia's holding cell, as well as by the repair receipts bearing Maejia's signature found in the glove compartment of the truck. Officer Drake, who interrogated Laracuente at the Memphis airport, was told by Laracuente (corroborating Meier's testimony) that Maejia hired Laracuente to drive the truck to Memphis.

The record thus is replete with substantial evidence from which a reasonable jury could find that Maejia participated in a conspiracy with Meier (and also involving Laracuente) to distribute cocaine. Maejia's insufficiency-of-the-evidence claim is therefore without merit.

In a related argument, Maejia contends that various hearsay statements (presumably those of Meier) were improperly admitted under Fed.R.Evid. 801(d)(2)(E). Even if this issue has been preserved for

appeal, a point the government disputes but over which we decline to labor,[2] it lacks merit. Maejia relies solely upon his argument that the government failed to show he participated in a conspiracy to distribute cocaine and that, as a result, the coconspirator exception to the hearsay rule was erroneously applied. Our holding that the evidence was sufficient to establish Maejia's participation in a conspiracy involving himself, Meier, and Laracuente disposes of this argument.

### III.

Maejia contends that the trial court committed error when it allowed into evidence the repair receipts bearing Maejia's signature that were found in the glove compartment of the red pickup truck. Maejia argues that these items fall under the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and therefore should have been disclosed to him.

■ The District Court found that Maejia had been notified of these receipts in an inventory list that the government provided him prior to trial. Trial Transcript, vol. I, at 99. The receipts also were referred to in the government's pre-trial brief. We are satisfied that the District Court was not clearly erroneous in its factual finding that the material had been disclosed, prior to trial, and within the time limit set for discovery.

■ In any event, *Brady* requires only the disclosure of material evidence that is favorable to the accused. In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court held that for *Brady* purposes "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." 473 U.S. at 682, 105 S.Ct. at 3383. As the receipts in question were neither favorable to Maejia nor material within the meaning of *Bagley*, Maejia's claim is totally lacking merit.

### IV.

Maejia argues that the initial traffic stop by Officer Leggett was a pretext to search Meier's vehicle for drugs without probable cause in violation of the Fourth Amendment. Maejia contends that all of the evidence found after the pretextual stop was a direct result of the illegal stop and thus should have been suppressed. The District Court found that the initial traffic stop was not pretextual. That finding will not be disturbed unless clearly erroneous. *See* Fed.R.Civ.P. 52(a); *United States v. Portwood*, 857 F.2d 1221, 1223 (8th Cir.1988).

■ In *United States v. Cummins*, 920 F.2d 498 (8th Cir.1990), we held that claims of pretextual traffic stops are to be resolved by making "an objective assessment of the officer's actions." 920 F.2d at 501 (quoting *Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978)). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." 436 U.S. at 138, 98 S.Ct. at 1723. *See United States v. Trigg*, 878 F.2d 1037 (7th Cir.1989); *United States v. Causey*, 834 F.2d 1179 (5th Cir. 1987); *United States v. Hawkins*, 811 F.2d 210 (3rd Cir.), *cert. denied*, 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987).

■ Here, the District Court correctly adopted the standard of "objective reasonableness without regard to the underlying intent or motivation of the officer involved," *Scott*, 436 U.S. at 138, 98 S.Ct. at 1723, considered the circumstances in which the stop occurred, and found that the stop was not pretextual. As we pointed out in *Cummins*, "this otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity." 920 F.2d at 501. Likewise, an otherwise valid traffic stop does not become unreasonable merely

---

**2.** Maejia does not direct us to any particular    statements or to his objections to them at trial.

because the officer knows that the car is allegedly involved in the transportation of drugs. The fact that Officer Leggett was engaged in an ongoing surveillance of a moving vehicle did not prohibit him from stopping the vehicle on discrete and objectively reasonable grounds. When an officer reasonably believes that a driver is under the influence of drugs or alcohol, and supports that belief with articulable facts, it is of no consequence that the vehicle was already under surveillance for suspected drug-related crimes. Officer Leggett had observed the car weaving back and forth in an erratic manner. He testified that the traffic lane was over twice as wide as the gold Mazda and that approximately four times in less than one mile the car veered from the center line to the edge of the road. The District Court credited Officer Leggett's testimony, and concluded that he had an objectively reasonable basis for stopping the car. In these circumstances, we cannot say that the District Court was clearly erroneous in its finding that the stop was not pretextual.

### V.

Maejia contends the affidavit submitted by the police to the magistrate was insufficient to establish probable cause for the search warrant that led to the discovery of three kilograms of cocaine in the red pick-up truck.[3] The District Court ruled that the affidavit was sufficient and denied Maejia's motion to suppress the cocaine. Maejia argues that the District Court erred in failing to apply Rule 13.1(b) of the Arkansas Rules of Criminal Procedure. That rule requires that an affidavit relying in whole or in part on hearsay must set forth particular facts bearing on the informant's reliability and that the affiant disclose, as far as practicable, the means by which the information was obtained. Maejia argues that this rule was not met. He also claims that the affidavit should have stated the specific number of times the trained police dog previously had been used with accurate results. We disagree that Arkansas law applies and with the notion that the affidavit must specifically set forth the number of times the dog has successfully alerted on controlled substances.

"[A] warrant underlying a federal conviction must be examined in light of federal standards." *United States v. Freeman*, 897 F.2d 346, 348 (8th Cir.1990). Under the Fourth Amendment, the issuer of a warrant must simply make a practical decision whether, given all the circumstances of the affidavit, "there is a fair probability that evidence of wrongdoing will be found." *United States v. Streeter*, 907 F.2d 781, 787 (8th Cir.1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

The affidavit submitted in this case provided a sufficient basis for the issuing judge's finding of probable cause. The affidavit contained information that the organized crime unit of the Memphis Police Department had learned from the Drug Enforcement Agency that the red pick-up truck parked at the Motel 6 in West Memphis was thought to contain a large amount of cocaine. The affidavit informed the issuing judge that a trained police dog had sniffed the truck for narcotics and had responded positively. *See United States v. McGauley*, 786 F.2d 888, 891–92 (8th Cir. 1986), in which we upheld a similar affidavit that relied, in part, upon the use of a trained dog to detect controlled substances. In addition, the affidavit in the present case states that the dog had been used in the past with successful results; there is no legal requirement that the affidavit specify the number of times the dog previously has sniffed out drugs. Considering the factual information set forth in the affidavit, we are convinced the issuing judge had a substantial basis for concluding there was a fair probability that cocaine would be found in the truck. We

---

**3.** The District Court initially entered an order that Maejia lacked standing to challenge the search of the truck, as he denied that the truck was his. The suppression hearing subsequently was reopened just prior to trial to allow the government to put on evidence as to the validity of the warrant.

therefore uphold the District Court's denial of Maejia's motion to suppress.

## VI.

█ Finally, Maejia argues that the District Court improperly characterized him as an organizer under the sentencing guidelines, United States Sentencing Commission, *Guidelines Manual,* § 3B1.1(c) (Nov.1990), resulting in an unwarranted two point offense level enhancement. The determination by the District Court that Maejia was an organizer is a factual finding and we must accept that finding unless it is clearly erroneous. *United States v. Collar,* 904 F.2d 441, 442 (8th Cir.1990). In determining whether a defendant is an organizer the sentencing court may consider such factors as the nature of his participation in the offense, whether he recruited accomplices, the extent of his involvement in planning or organizing the offense, and the nature and scope of the illegal activity. *See Collar,* 904 F.2d at 442 (quoting U.S. S.G. § 3B1.1, comment. (n.3).)

█ The record here supports the finding that Maejia was the organizer of the conspiracy to distribute cocaine that the government proved. The record shows, *inter alia,* that Maejia: hired Laracuente to drive the truck containing the cocaine; recruited Meier so that he might follow Laracuente, in the safety of Meier's car, to West Memphis; controlled the keys to and the movements of the truck; paid Laracuente $2,000 for his two days of services; and had been under investigation for some time in Wisconsin and Illinois for extensive, high-volume, cocaine trafficking. On this record, we must conclude that the District Court's finding that Maejia was an organizer within the purview of section 3B1.1(c) of the guidelines was not clearly erroneous.

The convictions and the sentence are affirmed.