944 F.2d 396
 UNITED STATES of America, Appellee,
v.
John Allen JOHNSON, Appellant.
UNITED STATES of America, Appellee,
v.
Richard MILLER, a/k/a Richard Woods, Appellant.
UNITED STATES of America, Appellee,
v.
Roderick BROOKS, Appellant.
UNITED STATES of America, Appellee,
v.
Devon Arnez WILSON, Appellant.
 Nos. 90-5309 to 90-5312.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 11, 1991.
Decided Sept. 3, 1991.
Rehearing and Rehearing En Banc
Denied Nov. 8, 1991.
 
 Heidi Crissey, Stillwater, Minn., for appellant Johnson.
 Larry Reed, Minneapolis, Minn., for appellant Miller.
 Neil Dieterich, St. Paul, Minn., for appellant Brooks.
 John Wylde, Minneapolis, Minn., for appellant Wilson.
 Jeffrey Paulsen, Asst. U.S. Atty., Minneapolis, Minn., for U.S.
 Before MAGILL, BEAM, and LOKEN, Circuit Judges.
 BEAM, Circuit Judge.
 Following a joint trial John Allen Johnson, Richard Miller, Roderick Brooks, and Devon Arnez Wilson were convicted of drug trafficking and firearms offenses. Johnson and Wilson were convicted of Counts III, IV, and V of a five-count indictment alleging possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (1988), use of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (1988), and conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846 (1988). Miller and Brooks were convicted of Counts III, IV, V, and Counts I and II alleging possession with intent to distribute cocaine base and use of a firearm during and in relation to a drug trafficking offense.
 The appellants all received substantial prison sentences. Johnson was sentenced to concurrent 200-month terms of imprisonment on Counts III and V, and a mandatory consecutive five-year term on Count IV. See 18 U.S.C. § 924(c). Because he has two prior felony drug convictions, Miller was sentenced to mandatory life terms without parole on Counts I, III, and V, see 21 U.S.C. § 841(b)(1)(A)(iii) (1988), followed by mandatory consecutive five-year terms on Counts II and IV. Wilson also has two prior felony drug convictions and was sentenced to mandatory life terms without parole on Counts III and V followed by a mandatory five-year term on Count IV. After departing downward from the applicable range under the sentencing guidelines, the district court sentenced Brooks to concurrent 166-month terms on Counts I, III, and V followed by mandatory consecutive five-year terms on Counts II and IV.
 The appellants raise numerous issues on appeal. They contend that: 1) the evidence was not sufficient to support their convictions; 2) they should have been tried separately; 3) certain evidence should have been suppressed; 4) the sentencing enhancements for obstruction of justice were improper; and 5) the life sentences without parole were illegal and unconstitutional.[1] We affirm the judgments with the exception of Wilson's sentence.
 
 I. BACKGROUND
 
 1
 These prosecutions resulted from investigations of drug trafficking at two locations in St. Paul, Minnesota. Based on information from a confidential informant and from prior surveillance, a search warrant was obtained for the house located at 549 Edmund Street. The confidential informant indicated that he had purchased cocaine base (crack) at that location. Surveillance conducted for several days before June 20, 1989, revealed that up to ninety people per hour were approaching this house, remaining for a few minutes, and leaving.
 
 
 2
 On the night of June 20 a search warrant was executed at 549 Edmund. Upon forced entry, officers from the St. Paul Police Department's Critical Incident Response Team, who secured the house, and officers from the narcotics division, who conducted the search, discovered Miller, Brooks, and DeWanye Hardin[2] crouched in the closet of a dark bedroom. A loaded handgun was found in the same closet and ammunition was found scattered on the floor. An unloaded handgun was discovered in a window air conditioner in the same bedroom. A total of 87.2 grams of cocaine base were found in the closet and in the air conditioner. Another loaded handgun was found inside a couch cushion in the living room. A police radio scanner and several pagers, one of which belonged to Wilson, were also found in the house. In the kitchen, officers found a scale, packaging materials, razor blades, and, next to the back door, a tub containing $819. Officers discovered $33 on Brooks and $247 on Miller, each man also possessed a key to the Edmund Street house.
 
 
 3
 Johnson owned the house located at 549 Edmund and identified a man known to him as Tony Harris as the lessee and Brooks and Miller as residents of that house. Id. vol. VII, at 144-48. Johnson was not a suspect in the investigation at this time. In fact, at trial, Johnson claimed that he had been assisting the police in an effort to stop the drug dealing at 549 Edmund. Johnson supported this claim with evidence that he had called the St. Paul Police Department before the execution of the search warrant and provided a confidential (he identified himself as the owner of the property) tip that California gang members were selling drugs at that location. And, after the search, he identified photographs of the three men who were living at 549 Edmund for Sergeant Zaruba of the St. Paul Police Department.
 
 
 4
 Brooks, Miller, and Hardin were arrested and then released from jail. They left Minnesota for a short time; and, when they returned, they approached Johnson looking for another place to live. Johnson agreed to allow them to live at 851 Aurora, another house he owned in St. Paul. Johnson agreed to this arrangement only after receiving the approval of Sergeant Zaruba. Johnson assured Zaruba that no drug dealing would occur at 851 Aurora and that he would keep the police informed as to the activities of Brooks, Miller, and Hardin.
 
 
 5
 On July 19, 1989, officers from the St. Paul Police Department executed a search warrant at 851 Aurora. When the officers entered through the rear door of the house, they saw Miller drop an object and run from the kitchen. Miller was apprehended and searched. In separate pockets officers discovered cocaine base, $277, and a wallet containing $35. Two loaded handguns, ammunition, and cocaine base were found on the kitchen floor. Razor blades and a scale were also found in the kitchen. A rifle was discovered underneath a couch in the living room and another rifle was found between a mattress and box spring in a first floor bedroom. Additional cocaine base was found in the toilet on the first floor.
 
 
 6
 Brooks was found in a second floor bedroom rolled up in a carpet. In separate pockets he had $20.94 and $259. Johnson and Wilson were found in another second floor bedroom along with razor blades, cocaine base, and baking soda. In Wilson's pockets officers found $844 and a note regarding the price of a currency counter. Altogether, 72.1 grams of cocaine base were found at the Aurora house.
 
 II. DISCUSSION
 A. Sufficiency of the Evidence
 1. Johnson
 
 7
 Johnson contends that the evidence was insufficient to support his conviction for possession with intent to distribute cocaine base. While he argues that he was merely present at the Aurora house, that he was unaware that any drugs were in the room in which he was sleeping at the time of the search, that any drugs he may have possessed were solely for personal use, and that he was actually a concerned citizen who wanted the drug trafficking at his houses to stop, the evidence certainly was sufficient to allow the jury to conclude otherwise.
 
 
 8
 Johnson's conviction must be upheld "if, viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, we conclude that a reasonable fact-finder could have found ... beyond a reasonable doubt" that he knowingly possessed cocaine base with the intent to distribute it. United States v. Maejia, 928 F.2d 810, 812 (8th Cir.1991). See also United States v. Matra, 841 F.2d 837, 840 (8th Cir.1988) (knowing possession with intent to distribute required to support conviction under 21 U.S.C. § 841(a)(1)). Constructive possession is sufficient to establish knowing possession. Matra, 841 F.2d at 840. "A person has constructive possession of contraband if he has 'ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.' " Id. (quoting United States v. Cardenas, 748 F.2d 1015, 1019 (5th Cir.1984) (citation omitted)). Further, constructive possession may be joint among several defendants. United States v. Brett, 872 F.2d 1365, 1369 (8th Cir.), cert. denied, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989).
 
 
 9
 Johnson not only owned the Aurora house, but he also lived there. His money was found in the dresser in the bedroom where he was found. He had installed a doorbell at the back door of 549 Edmund so that the occupants could distinguish between customers and police officers and expressed his concern that the traffic should be routed to the back door. Trial Transcript vol. IV, at 176-77. A similar doorbell had been installed at 851 Aurora. In addition to the rent he received, Johnson was given additional money and free drugs at 549 Edmund. Id. at 177-78. Johnson also brought customers to the Edmund house. Further, the evidence, viewed in a light most favorable to the government, indicated that Johnson was aware of the drug trafficking at 851 Aurora and did not inform Sergeant Zaruba of it, id. vol. VIII, at 74, thereby contradicting his claim that he was acting as a concerned citizen and providing information to the police. The jury easily could have rejected his assertion that, although he was present, he was not involved in the illegal activity. The evidence supports a finding that Johnson had both constructive and actual possession of cocaine base at 851 Aurora with the intent to distribute it.
 
 2. Wilson
 
 10
 Wilson challenges the sufficiency of the evidence on all three counts of which he was convicted. In regard to his section 924(c) conviction, he apparently contends that because the substantive drug trafficking charges are not supported by sufficient evidence the gun charge must be reversed. While we agree with this legal argument, we find the evidence sufficient to support the drug trafficking charges, and, therefore, this follow on argument to be without merit.
 
 
 11
 To convict Wilson of conspiracy under section 846, the government had to prove that he agreed with at least one other person to possess with intent to distribute cocaine base. See Maejia, 928 F.2d at 812-13. The evidence showing a conspiracy may be direct or totally circumstantial. Id. at 813. And, as indicated, to convict him of possession with intent to distribute, the government had to prove that he had actual or constructive possession of cocaine base. The evidence relating to both of these counts is similar, and, viewed most favorably to the government, sufficient to allow a reasonable jury to conclude that Wilson was more than an innocent bystander. When the officers entered 851 Aurora, they found Wilson in the same bedroom in which they found Johnson. Cocaine and drug paraphernalia were found in that bedroom. On Wilson's person, in separate pockets, officers found $75, $219, $550, and a note regarding the purchase of a currency counter. According to the evidence, drug dealers often separate money into different pockets. Furthermore, officers found car repair receipts in Wilson's car which listed his address as 549 Edmund and his phone number as Johnson's phone number at 851 Aurora. And, a pager found at 549 Edmund had been rented to Wilson. Finally, the testimony of one of the officers conducting surveillance at 851 Aurora prior to the execution of the search warrant indicated that Wilson left that house driving a car and returned a short time later at least three times that evening, the last time about twenty minutes before the search. According to the government's theory, Wilson made these excursions to replenish the supply of cocaine base. We think that the evidence was sufficient to allow a reasonable jury to conclude that Wilson possessed cocaine base with the intent to distribute it and that he participated in a conspiracy to do the same.
 
 3. Miller
 
 12
 Miller contends that the evidence was insufficient to support his conviction because the government failed to prove that at least fifty grams of cocaine base were involved. He argues that the amount of cocaine alleged in the indictment (or at least the amount necessary to invoke the enhancement provisions of section 841(b)) is an element of the offense which the government was required to prove at trial. Here, he contends, the evidence revealed that the government's chemist randomly tested only forty-three grams of the substances found in various locations in the two houses. Because the tested samples were taken from bags found in different locations in the houses, as opposed to samples taken from a single bag, the random sample was not reliable. Thus, Miller asserts, the evidence was insufficient to support his conviction.
 
 
 13
 Miller's argument that the amount of cocaine base alleged in the indictment is an element of the offense of conviction is contrary to the law of this circuit. See United States v. Luster, 896 F.2d 1122 (8th Cir.1990). In Luster we held:
 
 
 14
 The quantity of the drug under subsection 841(b)(1)(A) does not create a separate offense for violations of subsection 841(a). Rather, the quantity only "designates 'a particular fact relevant to sentencing defendants convicted under the substantive provisions of [subsection] 841(a), [and] dictate[s] the enhancement available if the sentencing judge determines the offense so warrants.' "
 
 
 15
 Id. at 1126 (citations omitted) (quoting United States v. Padilla, 869 F.2d 372, 381 (8th Cir.), cert. denied, 492 U.S. 909, 109 S.Ct. 3223, 106 L.Ed.2d 572 (1989)) (emphasis added) (quoting United States v. Wood, 834 F.2d 1382, 1390 (8th Cir.1987)). Thus, the district court did not err in denying Miller's motion for acquittal based on the government's failure to prove an element of the offense. In addition, as noted, infra, in our discussion of Miller's challenge to his enhanced sentence, the sampling procedures employed in this case were sufficient to prove that the entire amount of seized substances was cocaine base.
 
 B. Severance
 
 16
 The appellants were jointly indicted. They argue that their trials should have been severed due to the prejudicial effect of antagonistic defenses.[3] See Fed.R.Crim.P. 14. They contend that Johnson should have been tried separately because his defense was irreconcilable with the other defenses. As noted, Johnson argued to the jury that he was not involved with the drug transactions that occurred at 549 Edmund and 851 Aurora. He maintained that while he owned both houses, he acted solely as a landlord. He admitted that he knew drug transactions were occurring, and argued that he was actually cooperating with the police. Miller, Brooks, and Wilson all contended that they were merely present during the raids and that they had no connection with the drug sales. Rule 14 provides: "If it appears that a defendant ... is prejudiced by a joinder ... of defendants ... for trial together, the court may ... grant a severance of defendants or provide whatever other relief justice requires." This circuit recognizes a preference for joint trials of co-conspirators. See United States v. Payne, 923 F.2d 595, 597 (8th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991). A district court's denial of a motion for severance will not be reversed absent an abuse of discretion resulting in clear prejudice. Id. The existence of antagonistic defenses does not require severance unless the defenses are actually irreconcilable. See United States v. Jones, 880 F.2d 55, 63 (8th Cir.1989). In Jones, this court held that a defense is irreconcilable when the jury, to believe the core of one defense, must necessarily disbelieve the core of another. Id. The mere fact that one defendant tries to shift blame to another defendant does not mandate separate trials. Id.
 
 
 17
 Here, the defenses were not irreconcilable. Johnson asserted that he was acting as a concerned citizen who was not involved in the drug trafficking at either 549 Edmund or 851 Aurora. Brooks, Miller, and Wilson argued to the jury that they were present, but did not participate in the illegal activity. The appellants argue that these defenses are irreconcilable because drug trafficking was admittedly going on and someone had to be doing it. It is clear that the jury chose not to believe any of the defendants. The jury was not, however, in a position where it must have disbelieved one defense in order to accept another. That is, had the jury chosen to believe that Johnson was not involved in the drug trafficking it could also have believed that Brooks, Miller, or Wilson was not involved. The appellants have failed to demonstrate prejudice from the denial of their severance motions. See United States v. O'Meara, 895 F.2d 1216, 1219 (8th Cir.) ("clear prejudice [results] when the defendant is deprived of an appreciable chance that he would not have been convicted in a separate trial"), cert. denied, --- U.S. ----, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990). The district court did not abuse its discretion by refusing to grant the appellants separate trials.
 
 C. Motion to Suppress
 
 18
 Both the search of 549 Edmund and the search of 851 Aurora were carried out pursuant to warrants issued by state court judges. The warrant for 851 Aurora, and the affidavit in support thereof, originally indicated that the search was to be of 851 Sherburne. The references to Sherburne were crossed out and Aurora was written in.[4] The warrant was issued on July 19, 1989, by Ramsey County District Judge Allan R. Markert. The address changes were all initialed "A.M." and dated "7-19-89."
 
 
 19
 The appellants sought to suppress the evidence seized pursuant to both warrants. They alleged that the warrants were overly broad and were not supported by probable cause. Brooks and Miller contend on appeal that the warrants were overly broad and that the warrant for 851 Aurora incorrectly described the location to be searched. Only the contention regarding a material alteration to the warrant for 851 Aurora merits discussion here.
 
 
 20
 Miller and Brooks did not assert that the warrant was invalid because the description of the premises to be searched had been changed until after the suppression hearing and the magistrate judge recommended denying the motions.[5] Officer Michael Carter, the affiant for the search warrant, then submitted an affidavit stating that Judge Markert had made and initialed the address changes before the warrant was executed. The magistrate judge found that Officer Carter informed Judge Markert of the incorrect address before leaving the judge's office and that the judge corrected it at that time. After denying the motions to suppress, the magistrate judge held a supplemental hearing to allow the defendants the opportunity to cross-examine Officer Carter. The magistrate judge again found that the corrections were made before the warrant was executed and denied the motions. We agree with the district court that the warrant was valid. See United States v. Arenal, 768 F.2d 263, 267 (8th Cir.1985) (typographical mistakes corrected before execution of warrant and at direction of judge did not render warrants invalid). Thus, the district court correctly denied the motions to suppress.
 
 D. Sentencing[6]
 
 21
 The enhanced penalty provisions of section 841(b)(1)(A)(iii) provide that any person who commits a violation of section 841(a) involving "50 grams or more of a mixture or substance ... which contains cocaine base ... after two or more prior convictions for a felony drug offense have become final ... shall be sentenced to a mandatory term of life imprisonment without release." The district court found that Miller and Wilson had the requisite prior convictions and sentenced them to life in prison without possibility of parole. Miller and Wilson both argue that a life sentence without parole, in these cases, constitutes cruel and unusual punishment in violation of the eighth amendment. In addition, Miller argues that the government failed to prove that fifty grams of cocaine base were involved.[7] And, Wilson argues that his life sentence is invalid because the government failed to comply with the procedural requirements to establish one of his prior convictions. See 21 U.S.C. § 851 (1988). We begin with the claims that the life sentences were not imposed in accordance with the law.
 
 1. Drug Quantity
 
 22
 The district court determined, based on the amount of cocaine base seized during the two searches and presented at trial and the testimony of the chemist who analyzed the substances and determined that they contained cocaine base, that at least fifty grams of cocaine base were involved in the offenses of which Miller was convicted.[8] Miller challenges the district court's finding on the sufficiency of the sampling procedures used by the chemist.
 
 
 23
 We have affirmed the use of random testing to establish that a substance contains cocaine base for purposes of sentencing under the guidelines. See Brett, 872 F.2d at 1372. In Brett, the laboratory chemist randomly selected six of eighty-two packets of cocaine base for chemical analysis. All eighty-two packets were part of one larger bag and the chemist testified that all of the packets contained the same " 'fairly hard and rocky substance.' " Id. Apparently, the chemist analyzed enough of the substances to prove the allegation in the indictment that the defendant possessed at least five grams of cocaine base.[9] Thus, the defendant's challenge was to the district court's determination of his offense level based on its finding that he possessed 46.66 grams. This court held that the district court's finding was not clearly erroneous. Id.
 
 
 24
 Although Brett involved sentencing under the guidelines and here the district court imposed sentence under the mandatory provisions of section 841(b), the underlying factual finding is the same. See United States v. Coppock, 919 F.2d 77, 78-79 (8th Cir.1990) (district court finding that defendant grew more than 100 marijuana plants, triggering mandatory five-year sentence under section 841(b)(1)(B)(vii), not clearly erroneous, relying on Brett ). The court must determine, by a preponderance of the evidence, the quantity of drugs involved. The substances seized in Brett were individually packaged, but were found in a single, larger package. Here, the evidence was seized from several different areas in the two houses. The chemist did not randomly test samples from each location. Rather, he randomly selected pieces of the seized substances from the various packages he was given and merely weighed the others. Although Miller asserts that this distinction makes Brett inapplicable, we disagree.
 
 
 25
 Officers seized 87.2 grams of cocaine base from two locations at 549 Edmund, which were received into evidence as Exhibits 20 and 21. The contents of Exhibit 20, which were found in the bedroom closet, tested positive for the presence of cocaine base. Exhibit 21 consisted of six individual packages found in the air conditioner in the same bedroom. The contents of one of the packages, which was chosen at random, tested positive for the presence of cocaine base. Trial Transcript vol. V, at 126-29. According to the testimony of one of the narcotics officers, all of these bags appeared to contain crack cocaine. Id. vol. IV, at 100-03.
 
 
 26
 The chemist tested the contents of two of the six exhibits (Exhibits 23-28) which contained suspected cocaine base seized from 851 Aurora. The contents of Exhibit 23, from the kitchen, and Exhibit 26, from Miller's pocket, both tested positive for the presence of cocaine base. Exhibits 24 and 25 contained substances also found in the kitchen. Officers testified that these substances appeared to be cocaine base. Id. vol. V, at 73-76, vol. IV, at 18. Exhibits 27 and 28 contained substances found in an upstairs bedroom which officers testified appeared to be cocaine base. Id. vol. IV, at 19-21, vol. V, at 161-62.
 
 
 27
 In summary, the government's chemist randomly selected and analyzed approximately forty-three grams of seized substances, all of which tested positive for the presence of cocaine base. Testimony indicated that the untested substances appeared to be cocaine base. We decline to adopt Miller's view that a sample from each location must be tested to establish that at least fifty grams of cocaine base were involved. In addition to our reliance on Brett, we note that "[p]roof of the existence of a controlled substance need not be by direct evidence." United States v. Meeks, 857 F.2d 1201, 1204 (8th Cir.1988) (holding that a reasonable jury could have concluded, based on repeated references to the substance as cocaine and testimony from witnesses who had used the substances which they believed to be cocaine, that substance was cocaine). The random testing and the officers' testimony that the untested substances appeared to be cocaine base were sufficient to support the district court's findings. The fact-finder presumably had the opportunity to examine and compare the tested and untested material in the exhibits received in evidence.
 
 2. Prior Convictions
 
 28
 Wilson asserts that the government failed to comply with the necessary procedures to establish one of his prior convictions and empower the district court to enhance his sentence under section 841(b). A prior conviction can be considered only when the government files an information, before trial, indicating its intent to rely on that conviction for sentencing purposes. See 21 U.S.C. § 851(a)(1). Section 851 provides, in part:
 
 
 29
 No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts.
 
 
 30
 Id.
 
 
 31
 The government filed an information indicating its intent to rely on one of Wilson's prior drug convictions several weeks before trial. The jury was selected, but not sworn, on January 2, 1990. On January 4 the government filed an amended information alleging two prior drug offenses.[10] The jury was sworn on January 5. In rejecting Wilson's argument that the information was not timely filed, the district court held that "the amended information was properly served and was served in a fashion which advised the defendant of the prior convictions upon which the government might rely. It was presented prior to the swearing of the jury, prior to the taking of evidence, and the Court finds this satisfactory." Transcript of Wilson's Sentencing Proceedings at 12. Wilson, however, asserts that his trial began when jury selection began and that the information was not timely filed.
 
 
 32
 In support of the district court's conclusion, the government contends that Wilson's trial did not begin until the jury was sworn. The government relies on United States v. Gill, 623 F.2d 540 (8th Cir.), cert. denied, 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94 (1980). In Gill, this court held that, in the context of a bench trial submitted on written stipulations of facts, a section 851 information was timely when filed before the court approved the defendant's waiver of jury trial, received the stipulations, and took the matter under submission. Id. at 542-43. The court noted that a bench trial cannot proceed until the court approves the defendant's waiver of jury trial, and that jeopardy attaches in a bench trial when evidence is introduced. Id. Thus, according to the government, a jury trial commences when jeopardy attaches, that is, when the jury is sworn. See Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062-63, 43 L.Ed.2d 265 (1975) ("jeopardy attaches when a jury is empaneled and sworn").
 
 
 33
 When a jury trial begins for purposes of section 851 is an issue that has not been clearly settled. See United States v. Brown, 921 F.2d 1304, 1308-09 & n. 6 (D.C.Cir.1990) (filing with judge on day of trial, before voir dire began, is sufficient, expressly declining to decide when a trial begins for purposes of section 851); United States v. Weaver, 905 F.2d 1466, 1481 (11th Cir.1990) (filing sufficient where court was orally notified of and defendant's counsel "was personally served with the information on June 13, 1988, prior to selection of the trial jury," even though filing occurred on June 17, "the fourth day after the start of trial"), cert. denied, --- U.S. ----, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991); United States v. Jordan, 810 F.2d 262, 268-69 (D.C.Cir.) (filing timely after judge ruled on motion to suppress evidence but before voir dire and empaneling of the jury), cert. denied, 481 U.S. 1032, 107 S.Ct. 1963, 95 L.Ed.2d 535 (1987). But see Arnold v. United States, 443 A.2d 1318, 1326 (D.C.1982) (under similar statute, information not timely when filed after jury selection process had begun). In other contexts courts have determined that a trial begins at different points. See Serfass, 420 U.S. at 388, 95 S.Ct. at 1062-63 (jeopardy attaches when jury is sworn); Hopt v. Utah, 110 U.S. 574, 578, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1884) (criminal defendant has right to be at trial when jury empaneling begins); United States v. Stayton, 791 F.2d 17, 19-21 (2d Cir.1986) (at least when no unreasonable delay follows, jury trial commences, for purposes of Speedy Trial Act, at the voir dire ); New Jersey v. Chesimard, 555 F.2d 63, 65 n. 1 (3d Cir.1977) (petition for removal under 28 U.S.C. § 1446(c), which requires filing "before trial," must be filed before jury selection begins); Greenwood v. Stevenson, 88 F.R.D. 225, 229 (D.R.I.1980) (for purpose of Fed.R.Civ.P. 68, which requires an offer of judgment be made ten days before trial, trial begins when judge calls proceedings to order and begins to hear case, even if the jury was previously empaneled).
 
 
 34
 The District of Columbia Court of Appeals determined, based on the stated purpose of a similar statute (to allow the defendant the opportunity to decide whether to plead or proceed to trial and to prevent unfair surprise after the trial begins) and its legislative history (indicating intent to provide a safeguard to defendants subject to enhanced penalties) that prior to trial in the D.C.Code means before jury selection. Arnold, 443 A.2d at 1326. Additionally, the court noted that, in the context of a defendant's right to be present, at trial includes jury selection, and that the common understanding of lawyers and judges is that a trial includes jury selection. Id. at 1326-27. Thus, the court held that an information filed after the jury was selected, but before it was sworn, was not timely. Id.
 
 
 35
 The interpretation of section 851 has been more problematic. In contrast to the D.C.Code provision, the legislative history of section 851 provides no guidance. Both circuit courts that have considered this issue in the context of a jury trial have stated that filing before jury selection is sufficient. See Weaver, 905 F.2d 1466; Jordan, 810 F.2d 262. In Weaver, the Eleventh Circuit, as earlier noted, held that the government complied with the requirements of section 851 when, before jury selection began, it personally served the defendant with a copy of the information and orally notified the court that it was relying on prior convictions and that it would be filing an information. Weaver, 905 F.2d at 1481. The court did not specifically divulge when the jury was sworn, and, thus, we cannot determine whether the actual filing occurred before or after that time. However, the court noted that the government orally affirmed that it would file the information and that the defendant had a copy of the information before jury selection commenced. Further, the court referred to the actual filing date, June 17, 1988, as "the fourth day after the start of the trial." Id. Jury selection began on June 13, 1988. Apparently, the court believed that the trial began with the selection of the jury.
 
 
 36
 We agree with the reasoning supporting the decision in Arnold, and believe that section 851 requires filing before jury selection begins. Such an interpretation allows the defendant ample time to determine whether he should enter a plea or go to trial, and to plan his trial strategy with full knowledge of the consequences of a potential guilty verdict. Further, the government is not overly burdened. If the government encounters difficulty discovering prior convictions, section 851 allows it to seek a postponement of the trial. Here, the government did not comply with the requirements of section 851, and Wilson's sentence must be vacated.3. Eighth Amendment
 
 
 37
 Miller also contends[11], based on Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), that his sentences of life imprisonment without parole, pursuant to section 841(b)(1)(A)(iii), violate the eighth amendment because the sentences are not proportionate to the offenses. In Solem, the Supreme Court held unconstitutional a sentence of life imprisonment without parole imposed on a defendant who had been convicted of uttering a $100 no account check following six prior felony convictions. The Court enumerated three factors to consider when reviewing the proportionality of a sentence. A reviewing court should look at the gravity of the offense and the harshness of the penalty, the penalties imposed on other criminals in the same jurisdiction, and the sentences imposed for the commission of the same offense in other jurisdictions. Id. at 290-92, 103 S.Ct. at 3009-11. Since this case was submitted, however, the Supreme Court has substantially refined the application of the Solem factors. See Harmelin v. Michigan, --- U.S. ----, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).
 
 
 38
 In Harmelin, the Court upheld a mandatory life sentence without parole imposed under Michigan law for possessing more than 650 grams of cocaine. Harmelin had argued that his sentence violated the eighth amendment's ban on cruel and unusual punishment because it was not proportionate to his offense and because the sentencing court was not allowed to consider mitigating circumstances. A majority of the Court rejected both arguments and voted to affirm the judgment. Five justices agreed that mandatory sentences and life imprisonment without parole, in cases such as this, are not constitutionally infirm. The Court, however, issued three opinions, none of which, in its entirety, was joined by a majority of the justices.
 
 
 39
 The effect of Harmelin on the Solem proportionality factors is not entirely clear. Justice Scalia, announcing the judgment of the Court and writing an opinion joined by Chief Justice Rehnquist, indicated that Solem was incorrectly decided. Id. at ----, 111 S.Ct. at 2685-87 (Opinion of Scalia, J.). Relying on its history, he concluded that the eighth amendment does not require proportionality review in noncapital cases. Id. at ---- - ----, 111 S.Ct. at 2685-2701. Justice Kennedy, joined by Justices O'Connor and Souter, declined to overrule Solem. Rather, he noted that the eighth amendment provides for narrow proportionality review, including noncapital cases. Id. at ---- - ----, 111 S.Ct. at 2701-05 (Opinion of Kennedy, J.). Justice White, joined by Justices Blackmun and Stevens and, in part, by Justice Marshall, dissented, arguing that Solem provided the relevant basis for analysis and Harmelin's sentence violated the eighth amendment. Id. at ----, 111 S.Ct. at 2709-11 (White, J., dissenting); Id. at ----, 111 S.Ct. at 2719 (Marshall, J., dissenting).
 
 
 40
 Recognizing that the "precise contours [of proportionality review] are unclear," Justice Kennedy set forth what he believed to be "some common principles that give content to the uses and limits of proportionality review." Id. at ----, 111 S.Ct. at 2683 (Opinion of Kennedy, J.). Drawing from Solem, Hutto v. Davis, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), and Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), he concluded: 1) Determining the purposes and objectives of a punishment system and fixing the prison terms for specific offenses are functions properly left to the legislature. The courts should give substantial deference to the legislature's authority in this area. 2) The eighth amendment does not mandate a specific penological theory. 3) Substantial divergence in sentencing theories and terms are likely to result and may be beneficial. A sentence is not necessarily disproportionate because it would not have been imposed in any other state. 4) Objective factors should guide proportionality review. The lack of objective standards to distinguish between terms of years makes successful challenges to such sentences exceedingly rare. Id. In summary, the eighth amendment does not require strict proportionality between offense and sentence, and "it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id. (quoting Solem, 463 U.S. at 288, 303, 103 S.Ct. at 3008, 3016-17).
 
 
 41
 Applying these principles, Justice Kennedy concluded (without considering sentences imposed for other crimes in Michigan or sentences imposed for similar crimes in other jurisdictions) that because of the severity of the offense Harmelin's sentence was within constitutional limits. Id. at ----, 111 S.Ct. at 2705-07. He noted that Solem did not mandate comparisons with other sentences, but merely suggested that such comparisons might be helpful. "[I]ntra- and inter-jurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. Thus, Justice Kennedy decided that:
 
 
 42
 The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.... In light of the gravity of [Harmelin's] offense, a comparison of his crime with his sentence does not give rise to an inference of gross disproportionality, and comparative analysis of his sentence with others in Michigan and across the Nation need not be performed.
 
 
 43
 Id. at ----, 111 S.Ct. at 2707.
 
 
 44
 Thus, two justices would apply no proportionality review outside the capital context, and three other justices would apply proportionality analysis only when the sentence at issue leads to an inference of gross disproportionality. This circuit has followed a similar path, but not to the same degree. See United States v. Meirovitz, 918 F.2d 1376, 1380-81 (8th Cir.1990) (noting the suggestive language in Solem, but deciding to "engage in the rare review of the constitutionality of a district court sentence" because sentence imposed was life without parole). In light of Harmelin, we believe that proportionality review of Miller's sentences is not required. Congress has reasonably determined that offenses involving the distribution of cocaine base "are at the root of some of the gravest problems facing our country." See id. at 1381. See also United States v. Buckner, 894 F.2d 975, 978 (8th Cir.1990) (cocaine base is more dangerous than cocaine powder because it is more potent, is highly addictive, and is relatively inexpensive). Miller's sentences are not grossly disproportionate to his offenses.
 
 III. CONCLUSION
 
 45
 We find no merit to the other issues raised. Wilson's life sentence is vacated and we remand for resentencing in accord with this opinion. In all other respects the judgments of the district court are affirmed.
 
 
 
 [1]
 Brooks also asserts that the prosecutor improperly cross-examined him on his post-arrest silence and that impeachment evidence used against Johnson violated his confrontation rights. And, Miller claims that the district court committed a variety of errors, such as refusing to order the disclosure of the identity of a confidential informant, failing to suppress a statement he made at the time of his arrest, and giving several improper jury instructions. We dismiss these claims without discussion. Johnson also raises an ineffective assistance of counsel claim. However, such claims are more appropriately raised in a collateral proceeding, pursuant to 28 U.S.C. § 2255 (1988), and we dismiss it without prejudice. See United States v. Lewin, 900 F.2d 145, 149 (8th Cir.1990). Although a narrow exception exists to the general rule when a claim of ineffective assistance is raised in the trial court and an adequate record is developed, this is not such a case
 
 
 [2]
 Hardin pleaded guilty to Count II of the indictment and testified at the trial. Trial Transcript vol. IV, at 160
 
 
 [3]
 The appellants also argue that the jury was unable to compartmentalize the evidence as it related to them individually. However, they have failed to show that the jury was unable to follow the district court's careful instructions regarding the relevance and admissibility of any of the evidence. And, they have not demonstrated that the jury was unable to separate the evidence as it related to each of them individually
 
 
 [4]
 One reference to 851 Sherburne was not changed in the affidavit. This apparently was due to an oversight and does not affect our analysis of the warrant's validity
 
 
 [5]
 Miller and Brooks also allege that the magistrate judge erred in considering evidence (Officer Carter's affidavit) submitted after the suppression hearing. The district court did not abuse its discretion in ordering that the suppression hearing be reopened to allow consideration of evidence not presented at the initial hearing. The facial validity of the warrant was not challenged until after the hearing, and Miller and Brooks were allowed to cross-examine the witnesses called at the subsequent hearing
 
 
 [6]
 Johnson and Brooks challenge the district court's decision to impose two-level enhancements based on their untruthful testimony at trial. See U.S.S.G. § 3C1.1. See also United States v. Dyer, 910 F.2d 530, 533 (8th Cir.) ("[p]erjury at trial unquestionably amounts to obstruction of justice within the meaning of § 3C1.1"), cert. denied, --- U.S. ----, 111 S.Ct. 276, 112 L.Ed.2d 232 (1990). (As indicated, the district court granted Brooks a downward departure after finding that Brooks's criminal history category vastly overstated the severity of his criminal past. In determining the proper offense level from which to depart, however, the court assessed Brooks a two-level increase for obstruction of justice.) They do not deny lying under oath. Rather, Johnson asserts that he lied because of threats against himself and his family, and Brooks claims that section 3C1.1 is an impermissible burden on his right to testify. This court has rejected Brooks's argument. See United States v. Wagner, 884 F.2d 1090, 1098-99 (8th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). Further, Johnson's argument does not provide a basis for reversing the district court
 
 
 [7]
 Miller also argues that the enhancement provisions contained in section 841(b) violate the fifth and fourteenth amendments. He asserts that treating fifty grams of cocaine base as the equivalent of five kilograms of cocaine powder violates his rights to due process and equal protection. In support of this contention, Miller alleges that the severe sentences for violations involving cocaine base are more likely to be given to minorities because cocaine base is less expensive than cocaine powder. Thus, minorities are disparately impacted. Miller draws support from a Minnesota state district court case which held that a Minnesota statute imposing more severe penalties on individuals convicted of offenses involving cocaine base than those involving cocaine powder violated the equal protection clause of the United States Constitution because of its disparate impact on blacks. See Minnesota v. Russell, No. 89067067, Order (4th Judicial District Dec. 27, 1990); Minnesota v. Russell, No. 89067067, Supplemental Findings of Fact and Conclusions of Law (4th Judicial District Jan. 29, 1991). Miller's due process claim is without merit. United States v. Buckner, 894 F.2d 975, 978-80 (8th Cir.1990) (holding "100:1" ratio is rationally related to objective of protecting public welfare because cocaine base is more dangerous to society than cocaine powder). Miller's equal protection argument, which we note was not properly raised in the district court, is equally unavailing. See United States v. House, 939 F.2d 659, 664 (8th Cir.1991) (statutory distinction between cocaine base and cocaine powder does not discriminate based on race and does not violate the equal protection clause)
 
 
 [8]
 To establish that more than fifty grams of cocaine base were involved, the government submitted additional amounts for testing after the trial but before sentencing. The district court, however, based its findings only on the evidence presented at trial
 
 
 [9]
 In Brett, the defendant was sentenced under the enhancement provisions of section 841(b)(1)(B)(iii) relating to offenses involving more than five grams of cocaine base
 
 
 [10]
 The government asserted that it was hampered in its search for prior convictions by Wilson's use of different names
 
 
 [11]
 Wilson joins this argument. However, our finding that his sentence was improperly enhanced makes this discussion irrelevant to his appeal