UNITED STATES of America, Appellee,

v.

**Jackie L. LUSTER, Appellant.**

UNITED STATES of America, Appellee,

v.

**Sue LUSTER, Appellant.**

**Nos. 89–1767, 89–1768.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1989.

Decided Feb. 22, 1990.

---

1124

David H. Johnson, and Raymond C. Conrad, Kansas City, Mo., for appellant.

David DeTar Newbert, Kansas City, Mo., for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HENLEY, Senior Circuit Judge.

Jackie and Sue Luster, a married couple, appeal the judgments entered upon their convictions of distributing cocaine base ("crack cocaine"), contending that the district court erred in denying their motions for judgments of acquittal as to one of the counts. Jackie Luster also argues that the district court[1] erroneously admitted into evidence exhibits of crack cocaine mixture allegedly distributed by him and expert testimony regarding those exhibits, incorrectly added two points to his offense level under the Federal Sentencing Guidelines ("Guidelines") for possessing a firearm during the charged criminal activity, and violated his due process rights by using the Guidelines to determine his sentence. We affirm the district court judgments but remand for resentencing of Mr. Luster because of an error made in computing the amount of crack cocaine mixture he distributed.

I.

The indictment charged Jackie Luster with three counts of "knowingly and intentionally distribut[ing] a mixture and substance containing cocaine base" in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (1982 & Supp. V 1987) (Counts I–III); two counts of "knowingly and intentionally distribut[ing] a mixture and substance containing cocaine base ... in an amount of 5 grams or more" in violation of 21 U.S.C.

---

1. The Honorable Scott O. Wright, United States District Judge, Western District of Missouri.

§§ 841(a)(1), 841(b)(1)(B) (1982 & Supp. V 1987) (Counts IV & V); and one count of "knowingly and intentionally distribut[ing] a mixture and substance containing cocaine base ... in an amount of 50 grams or more" in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) (1982 & Supp. V 1987) (Count VI). Sue Luster was also charged in Count VI.

At trial the prosecution introduced testimony supporting the following facts. Undercover Detective John Ciarletta of the Jackson County, Missouri, Drug Task Force purchased mixtures containing cocaine base from Jackie Luster in 1988 for $215.00 on April 11, $225.00 on April 14, $225.00 on April 27, and $1,200.00 on May 6. Dan McCarty, a government chemist, testified that the net weight of each mixture (that is, the weight of the substance without packaging) was 2.9 grams for the April 11 purchase (Exhibit 1), 3.2 grams for the April 14 purchase (Exhibit 2), 3.2 grams for the April 27 purchase (Exhibit 3), and 28.2 grams for the May 6 purchase (Exhibit 4).

On May 24, 1988, Drug Enforcement Agency (DEA) Special Agent Rick LaMere accompanied Ciarletta to the Luster residence for the fifth crack cocaine transaction with Mr. Luster. LaMere noticed a .22 caliber rifle lying on the floor of the living room. Ciarletta gave Mr. Luster $1,200.00 for a bag of crack cocaine, a yellowish brown mixture resembling a bar of soap or hunk of wax, which the defendant had "cooked up" in his kitchen from powder cocaine hydrochloride. Sanford Angelos, a DEA Chemist, testified that eighty-five per cent of the mixture (Exhibit 5) was cocaine base and the net weight of the mixture was 21.7 grams.

The sixth cocaine sale occurred on June 14, 1988, again at the Lusters' residence. Ciarletta and LaMere placed an order for two ounces of crack cocaine, which Jackie Luster telephoned to his supplier. During this telephone conversation, Mr. Luster told his supplier that Sue Luster would pick up the cocaine. After the telephone call, Mr. Luster informed the agents that the crack cocaine would cost $2,400.00 and

"hollered" at Mrs. Luster, who was studying in the dining room, to get ready and "go over and get it." Mr. Luster told Mrs. Luster that she was supposed to go to 58th and Brooklyn, to which she replied, "[O]h, I know where it's at. It's the place where we were there [sic] before."

While LaMere and Ciarletta waited in the living room for Mrs. Luster to return, they observed a .32 caliber handgun bullet on top of the coffee table and the same .22 caliber rifle LaMere had seen during the previous transaction. When Mr. Luster noticed the agents were looking at the bullet, he remarked "Yes, I've got a gun," and that he "wouldn't mind shooting a red neck." Earlier Mr. Luster had told Ciarletta that "if anybody ever snitched on him he'd blow their brains out" and that he "could beat a murder rap a lot easier than [he] could a drug rap."

Mrs. Luster returned in about thirty minutes and placed on the coffee table a clear plastic package containing a still-warm substance that was the same waxy and soap-like material as Ciarletta had received in the earlier transactions with Mr. Luster, but with a darker yellowish color than before. Chemist Angelos testified that the material in the package weighed 55.5 grams, eighty-seven per cent of which was cocaine base.

At the request of defense counsel, the trial judge instructed the jury that evidence related to the first five drug transactions was offered to prove Counts I through V against Jackie Luster alone and that only the evidence concerning the sixth transaction should be considered in returning the verdict as to Count VI against both Mr. and Mrs. Luster. The jury found Jackie Luster guilty of all counts and Sue Luster guilty of Count VI. Pursuant to the Federal Sentencing Guidelines, the district court sentenced Mr. Luster to 262 months and Mrs. Luster to 121 months imprisonment.

II.

The Lusters both contend that the district court should have granted their motions for acquittal on Count VI because the government failed to offer sufficient evi-

dence for a reasonable jury to return a verdict against them on this count. We consider their arguments in turn, viewing the evidence in the light most favorable to the government, *see United States v. O'Connell*, 841 F.2d 1408, 1424 (8th Cir.), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), *cert. denied*, — U.S. ——, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989).

### A.

Jackie Luster points out that Chemist Angelos's testimony established that only 48.285 grams of actual cocaine base were sold in the transaction of June 14 (eighty-seven per cent of the 55.5 gram mixture). He argues that the evidence was insufficient to submit Count VI to the jury because in order to obtain a conviction under this count, the government was required to prove that fifty grams or more of cocaine base were distributed.

■■■ We disagree with the defendant's contention for two reasons. First, although Count VI listed both subsections 841(a)(1) and 841(b)(1)(A) of title 21 as the legal basis of the charge, the prosecution did not need to prove the quantity of the drug under subsection 841(b)(1)(A) before the jury could find against the defendant on this count.[2] The quantity of the drug under subsection 841(b)(1)(A) does not create a separate offense for violations of subsection 841(a). *See Padilla*, 869 F.2d at 381. Rather, the quantity only "designates 'a particular fact relevant to *sentencing*

defendants convicted under the substantive provisions of [subsection] 841(a), [and] dictate[s] the enhancement available if the sentencing judge determines the offense so warrants.'" *Id.* (quoting *United States v. Wood*, 834 F.2d 1382, 1390 (8th Cir.1987)) (emphasis added); *accord United States v. Gohagen*, 886 F.2d 1041, 1043 (8th Cir. 1989). In order to obtain a conviction under Count VI, the government was only required to prove to the jury that the defendant knowingly and intentionally distributed cocaine base, and need not have shown that any particular minimum quantitative amount of the drug was sold. *See United States v. Sims*, 529 F.2d 10, 11 (8th Cir.1976) (noting that "[t]here is no minimum quantitative amount necessary to support a conviction" under 21 U.S.C. § 841(a)(1)).

■■■ The second reason we reject Mr. Luster's argument is that even if the prosecution were required to prove to the jury the quantity of cocaine base involved, there was sufficient evidence to find that the prerequisites for sentencing enhancement under subsection 841(b)(1)(A) were met. Subsection 841(b)(1)(A) does not require, as the defendant contends, that the cocaine base itself weigh fifty grams or more. *See Barnes*, 890 F.2d at 552. Rather, this provision mandates sentencing enhancement if the offense under subsection 841(a) involves "50 grams or more of a *mixture or substance* ... which contains cocaine base." *See* 21 U.S.C. § 841(b)(1)(A)(iii) (Supp. V 1987) (emphasis added).[3] In order

---

**2.** All of the counts of the indictment erroneously identified the charged offenses as violations of the penalty provisions of subsection 841(b)(1) as well as subsection 841(a)(1). Although the indictment should have listed only subsection 841(a)(1) as the legal basis of the charges, the mentioning of subsection 841(b)(1) provisions in each count was merely a technical error that did not prejudice the defendants as required for reversal under Federal Rule of Criminal Procedure 7(c)(3). *See United States v. Padilla*, 869 F.2d 372, 381 n. 5 (8th Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 3223, 106 L.Ed.2d 572 (1989). Similarly, the district court did not harm or prejudice the defendants by instructing the jury that an essential element of Counts IV through VI was to find the prerequisites for applying subsection 841(b)(1) were satisfied. *See* Instruction No. 5 (stating that in order to

convict on Counts IV and V, jury must find that "five grams or more of a mixture or substance containing cocaine base" were distributed, as required by 21 U.S.C. § 841(b)(1)(B)(iii)); Instruction No. 6 (stating that in order to convict on Count VI, jury must find that "50 grams or more of a mixture or substance containing cocaine base" were distributed, as required by 21 U.S.C. § 841(b)(1)(A)(iii)). These instructions in fact helped rather than hurt the defense because they required the government to prove more than that required by statute. *See United States v. Barnes*, 890 F.2d 545, 551 n. 6 (1st Cir.1989).

**3.** 21 U.S.C. § 841(b)(1)(A)(iii) enhances the minimum sentence for certain violations of 21 U.S.C. § 841(a) if the offense involved "50

for subsection 841(b)(1)(A)(iii) to apply, the government need only demonstrate that (1) the distributed mixture or substance contained a detectable amount of cocaine base, and (2) the net weight of the entire mixture or substance (that is, the weight of the entire mixture or substance without packaging) was fifty grams or more.[4] *See Barnes*, 890 F.2d at 552; *cf.* Drug Quantity Table n*, Guidelines § 2D1.1 (noting that "[c]onsistent with the provisions of the Anti–Drug Abuse Act, if any mixture of a compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity"). Chemist Angelos's testimony that the mixture sold on June 14 contained cocaine base and that the mixture's net weight was 55.5 grams, was sufficient evidence to support a finding that subsection 841(b)(1)(A)(iii) applied to Mr. Luster's sentencing.[5]

### B.

■ Mr. Luster also contends that because he did not personally hand the crack cocaine package to the agents or even touch the package during the June 14 transaction, he did not "knowingly and intentionally distribute" crack cocaine as alleged in Count VI. We disagree. Courts have interpreted the term "distribute" under subsection 841(a) quite broadly to include not only "the transfer of physical possession," but also "other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price." *United States v. Brunty*, 701 F.2d 1375, 1381 (11th Cir.), *cert. denied*, 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983); *see also, e.g., United States v. Collins*, 552 F.2d 243, 245–46 (8th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977) (holding that defendant could be convicted of distributing heroin under subsection 841(a)(1) even though he did not physically transfer the heroin but was a conduit in the exchange of money). Government testimony shows that Mr. Luster arranged the delivery of the crack cocaine on June 14 by telephoning his supplier, supervised the delivery by telling Mrs. Luster where to go to pick up the drug, and negotiated for and received the purchase price of $2,400.00. Clearly, there was enough evidence for a reasonable jury to find against Mr. Luster on Count VI.

■ Sue Luster argues that there was insufficient evidence of her guilt under Count VI because she did not have the requisite intent to distribute. Her contention is that although the evidence established she engaged in the physical acts alleged in the indictment, there was no evidence that she was aware that the substance she delivered was crack cocaine.

---

grams or more of a mixture or substance described in [21 U.S.C. § 841(b)(1)(A)(ii) ] which contains cocaine base." The mixtures and substances described in 21 U.S.C. § 841(b)(1)(A)(ii) are (1) "coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed"; (2) "cocaine, its salts, optical and geometric isomers, and salts of isomers"; (3) "ecgonine, its derivatives, their salts, isomers, and salts of isomers"; and (4) "any compound, mixture, or preparation which contains any quantity of any of the substance[s]" described in (1)–(3).

4. The wording of Count VI of the indictment erroneously implies that the cocaine base itself must weigh fifty grams or more in order for the sentencing enhancement of subsection 841(b)(1)(A) to apply. *Compare* Count VI of the Indictment (charging defendants with distributing "a mixture and substance containing co-

caine base ('crack'), a Schedule II controlled substance in an amount of 50 grams or more") *with* 21 U.S.C. § 841(b)(1)(A)(iii) (mandating sentencing enhancement for distribution of "50 grams or more of a mixture or substance ... which contains cocaine base"). The defendants have not argued that this error in the charge prejudiced their defense, however, and we see no grounds for reversal under Federal Rule of Criminal Procedure 7(c)(3).

5. We emphasize again that it is the trial judge, not the jury, who decides whether the government has met its burden of showing that 21 U.S.C. § 841(b) applies to the sentencing of the defendant. *See Barnes*, 890 F.2d at 551 n. 6. We hold that sufficient evidence existed to support a district court finding that subsection 841(b)(1)(A)(iii) applied to Mr. Luster's sentencing. This holding is relevant to our discussion later in this opinion of Mr. Luster's appropriate sentencing range under the Guidelines.

We disagree. Government testimony indicated that when Mr. Luster told Mrs. Luster to "go over and get it," she did not ask what "it" was, as would be expected if Mrs. Luster did not know what was intended to be distributed. Moreover, Mrs. Luster acknowledged she knew the location of the supplier's house because she had been there before. She left with $2,400.00 and returned with a still-warm clear plastic package of material that was yellowish brown, waxy, and soap-like—all of which are characteristics of crack cocaine. When considered together, these facts were more than sufficient for a reasonable jury to find that Mrs. Luster knowingly or intentionally delivered a mixture containing freshly cooked crack cocaine and did not mistake the mixture for, say, a very expensive warm bar of soap.

### III.

■ Mr. Luster next argues that the government did not adequately prove the chain of custody for admission of Exhibits 1 through 6, the crack cocaine mixtures he allegedly distributed, and did not lay a sufficient foundation for the testimony of chemists McCarty and Angelos regarding the contents of those exhibits. We review the trial judge's decision to admit the exhibits and expert testimony under the abuse-of-discretion standard. *See United States v. Peterson*, 867 F.2d 1110, 1115 (8th Cir.1989); *United States v. Kandiel*, 865 F.2d 967, 971 (8th Cir.1989). The trial transcript shows that government witnesses clearly traced the path of the exhibits from the points of sale to the laboratories where they were analyzed to the courtroom of the trial and that the prosecution laid an adequate foundation for the testimony of Dan McCarty, a forensic chemist with the Regional Crime Laboratory in Kansas City, Missouri, and Sanford Angelos, a DEA chemist at the North Central Regional Laboratory in Chicago. We conclude that the district court acted well within its discretion in admitting the exhibits and expert testimony.

### IV.

Mr. Luster's next contention is that the district court erred in adding two points to his base offense level under Federal Sentencing Guideline subsection 2D1.1(b)(1) for possessing "a firearm or other dangerous weapon ... during commission of the offense." The trial judge found that the .22 caliber rifle in the Lusters' living room was in the defendant's possession during the fifth and sixth transactions.

We will not reverse the district court's finding that Mr. Luster possessed a firearm for purposes of 2D1.1(b)(1) unless it is clearly erroneous. *See United States v. Green*, 889 F.2d 187, 188 (8th Cir.1989); 18 U.S.C. § 3742(e) (Supp. V 1987). The United States Sentencing Commission instructs that if a weapon was present during the charged offense, the 2D1.1(b)(1) adjustment applies unless "it is clearly improbable that the weapon was connected with the offense." Commentary Note 3, Guidelines § 2D1.1.

■ Mr. Luster first argues that the 2D1.1(b)(1) adjustment was unwarranted because there was no evidence that the rifle was loaded. In neither subsection 2D1.1(b)(1) nor the commentary to that subsection, however, is there any indication that the firearm must be loaded for sentencing adjustment to occur. The Commission defines the term "firearm" as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive." Commentary Note 1(e), Guidelines § 1B1.1. One court has recently interpreted this definition to encompass both operable and inoperable firearms. *See United States v. Burke*, 888 F.2d 862, 869 (D.C.Cir.1989); *cf. United States v. York*, 830 F.2d 885, 891 (8th Cir. 1987) (holding that 18 U.S.C. § 921(a)(3), which defines "firearm" as a "weapon ... designed to or may readily be converted to expel a projectile by the action of an explosion," does not require the weapon to be operable to be a firearm), *cert. denied,* 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988). We agree with the *Burke* court that the inoperability of the firearm should not bar a 2D1.1(b) adjustment, provided

that the firearm at the time of the offense did not clearly appear inoperable. In the present case, although the rifle was unloaded, the agents did not know that the weapon was not ready to fire; we thus conclude the inoperability of the rifle does not prevent the district court from making a 2D1.1(b)(1) adjustment to the sentencing offense level.

■ The defendant's second argument against the 2D1.1(b)(1) adjustment is that there was no evidence that he ever used or even touched the rifle during his criminal activity. This lack of proof of use or actual possession does not, however, bar a 2D1.1(b)(1) adjustment if the defendant's constructive possession is shown. *See, e.g., United States v. Jones*, 875 F.2d 674, 676 (8th Cir.) (affirming the trial judge's finding that the defendant possessed firearms during a drug offense "because they were located in close proximity to the drugs [the defendant] ... was in the business of distributing"), *cert. denied*, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). We have defined constructive possession of an item as " 'ownership, dominion, or control' " over the item itself, " 'or dominion over the premises' " where the item is located. *See United States v. Matra*, 841 F.2d 837, 840 (8th Cir.1988) (quoting *United States v. Cardenas*, 748 F.2d 1015, 1019 (5th Cir.1984)). Mr. Luster's ownership of the home where the rifle was located, as well as his tacit acknowledgment of ownership of the rifle through remarks that he was willing to use a weapon, were sufficient facts for the district court to find he constructively possessed the rifle.

Given the location of the rifle in the living room, where portions of the fifth and sixth crack transactions occurred, we conclude it was not "clearly improbable that the [rifle] ... was connected with the offense." Thus we hold the district court did not clearly err in making the 2D1.1(b)(1) adjustment.

### V.

■ Finally Mr. Luster argues that the district court's use of the Guidelines to determine his sentence violated his due process rights. The defendant contends that facts such as his possession of a firearm and his criminal record should have only been used to enhance his sentence under the Guidelines if the jury had made findings that those facts existed beyond a reasonable doubt. We disagree. Due process does not require "a right to trial by jury on each fact that results in an increase in a sentence," *United States v. Barnerd*, 887 F.2d 841, 842 (8th Cir.1989), nor does "[t]he Constitution ... impose a particular standard of proof for factual determinations at sentencing hearings," *United States v. Gooden*, 892 F.2d 725, 728 (8th Cir.1989). In *Gooden* we quoted the following Supreme Court passage as setting forth the procedural safeguards that must be followed to satisfy due process in sentencing:

> Due process ... requires that [the defendant] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed.

*Specht v. Patterson*, 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967), *quoted in Gooden*, 892 F.2d at 728. The trial and sentencing transcripts reveal that Mr. Luster was represented by counsel, had an opportunity to be heard, had an opportunity to confront the witnesses against him, had the right to cross-examine, and had the opportunity to offer evidence of his own. And, although the district court did not explicitly state the standard of proof it used in sentencing, its findings were adequate for us to make a meaningful review. We thus conclude that the trial judge's factfinding pursuant to the Guidelines satisfied due process.[6]

6. Mr. Luster also contends that the Guidelines violate the due process clause by eliminating the district court's sentencing discretion. We have rejected this argument in numerous cases, *see,* *e.g., Barnerd*, 887 F.2d at 842; *United States v. Brittman*, 872 F.2d 827, 828 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S. Ct. 184, 107 L.Ed.2d 140 (1989), and do so again here.

## VI.

■ In its appellate brief, the government candidly admits that in calculating Mr. Luster's base offense level, the presentence report relies upon an erroneous measurement of the total amount of crack cocaine mixture involved in the six counts. The report used the *gross* amounts of cocaine mixtures (that is, the weights of the substances including packaging) for Counts V and VI, which were 46.9 grams and 79.2 grams respectively, in finding the total quantity of mixture for the six counts to be 163.6 grams, with the base offense level at 34.[7] The presentence report should have used the *net* weights of the cocaine mixtures (that is, the weights of the substances without packaging), which were 21.7 grams for Count V and 55.5 grams for Count VI, and found a total quantity of mixture for the six counts to be 114.7 grams, with the base offense level at 32.[8]

The district court determined the defendant's total offense level to be 36 by adding two points to the base offense level of 34 for possession of a firearm under Guideline subsection 2D1.1(b). This total offense level and the defendant's criminal history category of IV produced a Guideline sentencing range of 262 to 327 months, which the trial judge followed in sentencing Mr. Luster to the Guideline minimum of 262 months imprisonment. Using the corrected

figures discussed above, the total offense level would be reduced to 34 (base offense level of 32 increased by two points for possession of a firearm), which results in a sentencing range of 210 to 262 months of confinement. However, because we hold that the sentencing enhancement of 21 U.S.C. § 841(b)(1)(A)(iii) is applicable to Mr. Luster, *see supra* n. 5, the defendant is required by this statutory provision to serve at least twenty years (240 months) in prison.[9] Thus, the correct sentencing range for Mr. Luster is 240 to 262 months imprisonment.

Although Mr. Luster's sentence of 262 months in prison is within the correct sentencing range, concerns arise in a case such as this in which the district court sentenced at or near the bottom of what it thought was the applicable guideline range. *See United States v. Bermingham*, 855 F.2d 925, 935 (2d Cir.1988). The district court might very well have sentenced the defendant to fewer months imprisonment had it known that it could sentence him to the statutory minimum of 240 months. Thus, we remand for resentencing of Mr. Luster pursuant to the applicable 240 to 262 month guideline range.[10]

## VII.

In sum, we affirm the district court's judgments entered on the defendants' con-

---

**7.** The total quantity of cocaine mixture was calculated as follows: 2.9 grams (Count I) + 3.2 grams (Count II) + 3.2 grams (Count III) + 28.2 grams (Count IV) + 46.9 grams (Count V) + 79.2 grams (Count VI) = 163.6 grams. The base offense level of 34 was determined using the Drug Quantity Table that accompanies Guideline section 2D1.1. *See* Drug Quantity Table, Guidelines § 2D1.1 (specifying a base offense level of 34 for offenses involving 150 to 499 grams of a mixture containing cocaine base).

**8.** The total quantity of cocaine mixture should have been determined as follows: 2.9 grams (Count I) + 3.2 grams (Count II) + 3.2 grams (Count III) + 28.2 grams (Count IV) + 21.7 grams (Count V) + 55.5 grams (Count VI) = 114.7 grams. The corrected quantity produces a base offense level of 32 under the Drug Quantity Table. *See* Drug Quantity Table, Guidelines § 2D1.1 (specifying a base offense level of 32 for offenses involving 50 to 149 grams of a mixture containing cocaine base).

**9.** 21 U.S.C. § 841(b)(1)(A)(iii) mandates that if fifty grams or more of a mixture containing

cocaine base is distributed, a defendant who has a prior conviction for a felony drug offense "shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment." The twenty-year statutory minimum applies to Mr. Luster because he was convicted previously in state court of the felony of possession of a controlled substance.

**10.** Resentencing is not warranted for Mrs. Luster because even if the net weight of 55.5 grams, instead of the gross weight of 79.2 grams, is used to compute her applicable sentencing range, she still has a total offense level of 34 (a base level of 32 increased by two points for possession of a firearm), which results in a guideline range of 121 to 151 months for her criminal history category of I. *See* Drug Quantity Table, Guidelines § 2D1.1 (specifying a base offense level of 32 for offenses involving mixtures weighing 50 to 149 grams and containing cocaine base).

victions but remand for resentencing of Mr. Luster consistent with this opinion.