952 F.2d 190
 UNITED STATES of America, Appellee,
v.
Vickie HAREN, Appellant.
UNITED STATES of America, Appellee,
v.
Richard HAREN, Appellant.
UNITED STATES of America, Appellee,
v.
Sebastian ALANIZ, Appellant.
UNITED STATES of America, Appellee,
v.
Doyle Kenneth HUGHES, Appellant.
 Nos. 91-1282, 91-1371, 91-1373 and 91-1880.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 9, 1991.
Decided Dec. 20, 1991.
Rehearing En Banc Denied
Feb. 7, 1992.
 
 Norman Wilkinson, Fort Smith, Ark., argued (Stephen G. Hough, Robert E. Hough and Gregory T. Karber, on briefs), for appellants.
 Deborah J. Groom, Fort Smith, Ark., argued, for appellee.
 Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 After a joint trial a jury convicted the four appellants of drug offenses arising out of an amphetamine manufacturing and distribution operation. Richard Haren was convicted of manufacturing amphetamine and conspiring to distribute amphetamine in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988). Vickie Haren and Sebastian Alaniz were convicted of conspiring to distribute amphetamine in violation of 21 U.S.C. § 841(a)(1) (1988). Doyle Hughes was convicted of aiding and abetting in the manufacture of amphetamine in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988). A fifth codefendant, Bud Lewis, was acquitted. The appeals of Richard Haren, Vickie Haren, and Sebastian Alaniz were consolidated and submitted to this court. The appeal of Doyle Hughes was submitted separately. In all the cases we now affirm in one opinion.
 
 I. BACKGROUND
 
 2
 From October 1988 to November 1989, the time of the charged conspiracy, Richard and Vickie Haren, husband and wife, owned property in rural Waldron, Arkansas and a residence in Hawkins, Texas. Testimony at trial, largely from the government's key witness, Alford Hart, revealed that amphetamine was produced at the Harens' property in Arkansas and distributed through various connections in Texas. Sebastian Alaniz was one of these Texas distributors. Another government witness, Linda Taylor, testified that she purchased amphetamine from both Richard Haren and Sebastian Alaniz in Texas.
 
 
 3
 On the Harens' property in Arkansas was a mobile home and several outbuildings or sheds. Hart testified that the amphetamine was produced in these sheds and that Doyle Hughes helped manufacture the amphetamine. Hart also testified that Richard Haren often buried jars full of amphetamine on the property, and that on one occasion the Harens apparently conducted a drug sale on the property. During a valid search of the property in November 1988, investigators found traces of amphetamine and chemicals used to produce amphetamine in the mobile home and the sheds. Agents also seized several firearms. During a subsequent lawful search in August 1989, officers seized several quarts of amphetamine oil, miscellaneous laboratory equipment, and more firearms.
 
 
 4
 Following their convictions, the district court[1] gave all the appellants substantial sentences for their involvement in the drug activity. Richard Haren was sentenced to 324 months for his role as the leader of the operation. Vickie Haren was sentenced to 97 months and Sebastian Alaniz was sentenced to 87 months on conspiracy charges. Doyle Hughes was sentenced to 51 months for aiding and abetting.
 
 
 5
 The appellants raise various issues on appeal, contending that: (1) the evidence was insufficient to support their convictions; (2) counsel was ineffective due to a conflict of interest; (3) the district court gave an improper jury instruction concerning conspiracy; (4) the district court improperly handled the jury's partial verdicts; (5) the district court should have excluded certain evidence; (6) the government violated its own Petite policy in prosecuting the case; and (7) the district court improperly applied the sentencing guidelines. As indicated, we affirm.
 
 II. DISCUSSION
 A. Sufficiency of the Evidence
 
 6
 Vickie Haren and Doyle Hughes claim the evidence of their involvement in the drug operation was insufficient to sustain their convictions. In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the government, upholds a conviction if a reasonable jury could have found guilt beyond a reasonable doubt, and recognizes that the evidence need not exclude every reasonable hypothesis other than guilt. United States v. Wainwright, 921 F.2d 833, 835 (8th Cir.1990).
 
 
 7
 Vickie Haren concedes the evidence clearly showed her husband's involvement in the conspiracy, but not hers. To convict Vickie Haren of conspiracy, the government had to prove that she agreed with at least one other person to possess with intent to distribute amphetamine. See United States v. Maejia, 928 F.2d 810, 812 (8th Cir.1991). After reviewing the record, we find there was sufficient circumstantial evidence for a jury to decide that Vickie Haren agreed to participate in the conspiracy. First, Alford Hart testified that while Vickie Haren helped load several glass laboratory containers into Hart's car in Texas, he heard her say she "wasn't taking any chances"--Hart was later arrested and amphetamine was found in his car. Second, she told one witness she had "packed up" the lab in Arkansas because she received a tip about a police raid. Third, she purchased a metal detector used by her husband to find amphetamine he had buried. Fourth, she was seen counting between $10,000 and $20,000, allegedly the proceeds of a drug transaction. Finally, she left a message on Linda Taylor's answering machine directing Taylor to some buried amphetamine at the Haren residence in Texas.
 
 
 8
 Doyle Hughes contends he was installing the heating and air conditioning system in the Harens' Arkansas residence, not manufacturing amphetamine. To convict Hughes of aiding and abetting the manufacture of amphetamine, the government had to prove that he helped produce the drug. Alford Hart testified that he, Richard Haren, and Hughes travelled from the Harens' Arkansas property to a nearby farm, manufactured amphetamine oil, took the oil back to the Haren property, and changed the oil into amphetamine powder. Hart also testified that he saw Hughes "cleaning glassware" at the Harens' property and believed that Hughes was trying to learn how to make amphetamine. A reasonable jury could have found this evidence was sufficient to convict Hughes.
 
 B. Conflict of Interest
 
 9
 Richard Haren claims his conviction should be reversed because his trial counsel labored under an impermissible conflict of interest. At their arraignment, Richard and Vickie Haren were represented by the same attorney, A. Wayne Davis. The magistrate[2] informed the defendants of their right to separate counsel and instructed Davis to file, within ten days, a statement of intent regarding separate counsel or a certification that no conflict would result from his joint representation of the Harens. Although no statement or certification was filed, Davis did move to withdraw from the case because he had not been paid. In that motion, Davis indicated that the Harens should have separate counsel and that the Harens had intended to have separate counsel from the beginning.
 
 
 10
 The district court denied Davis's motion to withdraw and referred the matter to the magistrate for a recommendation or determination regarding the possible conflict of interest. The magistrate again advised Richard and Vickie Haren of their right to separate counsel. After a recess in the proceedings, Davis informed the magistrate that he had conferred with the Harens, and indicated that Vickie Haren should have separate counsel. Davis stated, "I will stay with Mr. Haren." The magistrate appointed Davis to represent Richard Haren, and another attorney to represent Vickie Haren. These attorneys represented the Harens separately at trial. At the sentencing hearing, Richard Haren's present counsel argued, for the first time, that Davis's representation of Richard Haren was impaired due to the conflict.
 
 
 11
 A criminal defendant's sixth amendment right to effective assistance of counsel includes the right to be represented by counsel free of any conflicts of interest. United States v. Mooney, 769 F.2d 496, 499 (8th Cir.1985). In criminal cases where one counsel jointly represents more than one defendant, Fed.R.Crim.P. 44(c) requires the district court to advise the defendants of their right to separate counsel and to take appropriate measures to protect each defendant's right to effective counsel. We review a district court's determinations concerning conflicts of interest under the abuse of discretion standard. United States v. Kindle, 925 F.2d 272, 275 (8th Cir.1991) (citing United States v. Agosto, 675 F.2d 965, 970 (8th Cir.1982)).
 
 
 12
 Richard Haren does not, and cannot, claim the court failed to advise the Harens of their right to separate counsel; it did so several times. Rather, Haren claims the court erred in allowing counsel Davis to continue to represent him after originally representing both him and his wife. Although Haren does not phrase his argument as such, he essentially claims the court either failed to make a proper inquiry into the conflict or failed to take the appropriate protective measures required under Fed.R.Crim.P. 44(c).
 
 
 13
 With respect to the duty to inquire further into the possible conflict, we cannot say the court abused its discretion. When the court appointed Davis to continue representing Richard Haren, which was after arraignment but before trial, there was little to indicate that a possible conflict existed.[3] Davis consulted with the Harens, informed the magistrate that Vickie Haren should have separate counsel, and indicated that Richard Haren wanted Davis to continue as his counsel. A district court may give substantial weight to defense counsel's representations regarding conflicts of interest. Kindle, 925 F.2d at 275. Haren offered nothing at the original hearing concerning a possible conflict, and now makes unsupported assertions that his trial counsel was unable to shift damaging testimony onto Vickie Haren because of the previous attorney-client relationship he had with her.
 
 
 14
 With respect to the duty to take the appropriate protective measures required under Fed.R.Crim.P. 44(c), we again cannot say the court abused its discretion. The Advisory Committee Note states that "Rule 44(c) does not specify what particular measures must be taken. It is appropriate to leave this within the court's discretion, for the measures which will best protect each defendant may well vary from case to case." In dealing with the possible conflict, the magistrate was entitled to consider Richard Haren's apparent decision to keep Davis as his attorney. See Agosto, 675 F.2d at 970.
 
 C. Conspiracy Jury Instructions
 
 15
 Richard Haren, Vickie Haren, and Sebastian Alaniz claim the district court erred in refusing the proffered jury instructions concerning multiple conspiracies. Appellants contend the evidence did not show a single conspiracy, but rather showed multiple unrelated conspiracies. We disagree.
 
 
 16
 In United States v. Nevils, 897 F.2d 300 (8th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 125, 112 L.Ed.2d 93 (1990), this court summarized its well-established principles concerning single and multiple conspiracies:
 
 
 17
 The facts may prove a single conspiracy where the defendants have a common purpose. There must be mutual dependence or assistance, or each defendant must have some awareness of the nature and scope of the conspiracy and have joined in the conspiracy willingly.... A defendant need not have known every other conspirator.... The existence of common actions, however, does not prove that all the events under consideration were part of a single conspiracy.... The difficult task of distinguishing between single and multiple conspiracies is the province of the jury.... Where the evidence can support a finding of multiple conspiracies, a multiple conspiracy instruction must be given.
 
 
 18
 Id. at 306 (citations omitted). If evidence of multiple conspiracies exists and the court does not give a multiple conspiracy jury instruction, the jury may improperly transfer guilt from one defendant to another. United States v. Jackson, 696 F.2d 578, 586 (8th Cir.1982), cert. denied, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983).
 
 
 19
 Appellants contend the government alleged many different conspiracies involving amphetamine: between Richard Haren, Doyle Hughes, and Alford Hart to manufacture; between Sebastian Alaniz and Linda Taylor to distribute; between Richard Haren and Sebastian Alaniz to distribute; between Richard Haren, Vickie Haren, and Alford Hart to transport and distribute; and others.
 
 
 20
 Linda Taylor testified that she met Richard Haren at Sebastian Alaniz's house and saw Haren and Alaniz reach an agreement for Alaniz to sell amphetamine for Haren. Taylor also testified that she purchased amphetamine from both Haren and Alaniz in Texas. Alford Hart testified as to Vickie Haren's involvement in the conspiracy: helping her husband transport amphetamine, counting money from apparent drug sales, and purchasing a metal detector. Based on this evidence, we cannot say the district court erred in refusing to give a multiple conspiracy instruction.
 
 
 21
 Even if the evidence was sufficient to find multiple conspiracies, we will reverse a conviction only "[i]f the failure of the trial court to give a multiple conspiracy instruction results in substantial prejudice to any defendant...." Nevils, 897 F.2d at 307. Here, we can "say with 'fair assurance' that [any possible] error did not sway the jury's verdict." Id. (quoting Kotteakos v. United States, 328 U.S. 750, 752, 66 S.Ct. 1239, 1241, 90 L.Ed. 1557 (1946)).
 
 D. "Partial" Jury Verdict
 
 22
 Richard Haren, Vickie Haren, and Sebastian Alaniz contend the district court erred in allowing the jury to rehear portions of Alford Hart's testimony and in refusing to allow the jury to reconsider its decision regarding four of the codefendants. The jury deliberated for about four hours and then asked the judge for permission to review portions of Alford Hart's testimony. The jury foreperson indicated that the jury had reached a decision regarding four of the codefendants, but was hung regarding codefendant Bud Lewis. The judge told the jurors they had to listen to all of Hart's testimony, not just parts of it. After hearing all of Hart's direct testimony and a portion of cross-examination by Richard Haren's counsel, the judge ordered a recess.
 
 
 23
 During this recess, the judge decided not to replay all the codefendants' cross-examination of Hart because the jury was only undecided about Lewis. Only Lewis's cross-examination of Hart was replayed to the jury after the recess. Prior to hearing this cross-examination, the judge ordered the jury foreperson to place the other four verdict forms in a sealed envelope and deliver them to the court. After listening to Lewis's cross-examination of Hart, the jury deliberated and delivered the remaining verdict form to the court. All five verdicts were announced and the jury was polled, each juror acknowledging agreement with all of the verdicts.
 
 
 24
 Appellants claim the court improperly terminated the jury deliberations by collecting the four verdict forms early. When the jury asked to rehear Hart's testimony, however, it clearly expressed that it was undecided only about codefendant Lewis. The jury had already reached a verdict as to all the other codefendants, and had completed those verdict forms. Under Fed.R.Crim.P. 31(b), "the jury at any time during its deliberations may return a verdict with respect to a defendant or defendants as to whom it has agreed." Even though the judge did not collect these forms until after Hart's direct testimony was reheard, the handling of the verdict forms was not incompatible with Rule 31. The jury had ample time to consider or reconsider its verdicts and never asked to have the forms returned to them after rehearing the testimony. Moreover, the jurors were polled after the verdicts were read.
 
 
 25
 Appellants also claim the district court improperly allowed the jury to hear only portions of Alford Hart's testimony (i.e., only Lewis's cross-examination). Whether to allow the jury to review testimony during jury deliberations is within the sound discretion of the court. See United States v. Guerue, 875 F.2d 189, 190 (8th Cir.1989) (citing United States v. Koessel, 706 F.2d 271, 275 (8th Cir.1983)). Because the partial verdicts had, in effect, been decided, we cannot say the district court abused its discretion in replaying only portions of Hart's testimony.
 
 E. Evidentiary Issues
 
 26
 Richard Haren claims the district court should have granted his request to compel the government to release tape recordings of conversations between Alford Hart and Vickie Haren. Because the tapes do not contain recordings of Hart talking to Richard Haren, however, Fed.R.Crim.P. 16(a)(1)(A) does not require the government to produce the tapes. Haren argues that because the government did not use the tapes at trial, they were probably exculpatory and could have destroyed the credibility of Alford Hart, the government's key witness. Under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government must disclose material evidence that is favorable to the defendant. In this context, evidence is material only if there is a reasonable probability that its disclosure to the defense would have changed the outcome of the proceeding. See United States v. Maejia, 928 F.2d 810, 812 (8th Cir.1991) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)). In light of all the evidence against Richard Haren, we find it most unlikely that disclosure of the tapes would have changed the outcome of the trial.
 
 
 27
 Sebastian Alaniz argues that an admission he made to a DEA agent should have been introduced by the government at trial. Alaniz failed in his earlier attempts to have the statement suppressed. At trial, Alaniz's counsel mentioned the admission during his opening statement to the jury, but the government elected not to introduce it. Alaniz contends the government's failure to do so caused a mistrial. Alaniz's counsel took the risk of telling the jury about the admission. Alaniz cannot now predicate his request for a new trial on the government's decision not to introduce the statement. This claim is without merit.
 
 F. Petite Policy Violation
 
 28
 Sebastian Alaniz argues that the government's prosecution of him was improper because he had been convicted in Texas of an offense that arose out of the same transaction involved in the federal prosecution. Alaniz claims this multiple prosecution is in violation of the Justice Department's Petite policy. See United States v. Bartlett, 856 F.2d 1071, 1074-75 (8th Cir.1988) (describing the history and purposes of the Petite policy). We have held, however, that the Petite policy is an internal policy of federal prosecutors that does not confer any substantive rights on a defendant. Id. at 1075 (citing United States v. Moore, 822 F.2d 35, 36 (8th Cir.1987)). Therefore, Alaniz's claim that the federal prosecution was improper must fail.
 
 G. Sentencing
 
 29
 Richard Haren, Vickie Haren, and Sebastian Alaniz each raise several sentencing issues and request a reduced sentence. The district court's findings of fact at a sentence hearing will be accepted on appeal unless they are clearly erroneous. United States v. Johnson, 925 F.2d 1115, 1117 (8th Cir.1991).
 
 1. Vickie Haren
 
 30
 Vickie Haren raises five issues regarding her sentence. First, she claims the district court improperly added two points to her base offense level under Section 2D1.1(b)(1) of the United States Sentencing Guidelines for "possessing a firearm ... during the commission of the offense." She contends she did not actually possess the guns (her husband did) and, even if she did technically possess them, the guns were not connected with the offense.
 
 
 31
 The district court found that Vickie possessed the guns and we will not reverse such a finding unless it is clearly erroneous. United States v. Luster, 896 F.2d 1122, 1128 (8th Cir.1990). To receive an enhanced sentence, the defendant need not actually have the weapon in hand; constructive possession is sufficient. Constructive possession is " 'ownership, dominion, or control' over the item itself, or 'dominion over the premises.' " Id. at 1129 (quoting United States v. Matra, 841 F.2d 837, 840 (8th Cir.1988)). Because Vickie Haren did exercise dominion, along with her husband, over the mobile home where the guns were found, we cannot say the district court was clearly erroneous in finding that Vickie Haren possessed the firearms.
 
 
 32
 We have also held, however, that "[a] firearm's mere 'presence' is not sufficient to mandate application of the enhancement." United States v. Khang, 904 F.2d 1219, 1224 (8th Cir.1990) (footnote omitted) (citing United States v. North, 900 F.2d 131, 134 (8th Cir.1990)). Application Note 3 to Section 2D1.1 of the United States Sentencing Guidelines states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." (Emphasis added.)
 
 
 33
 Here the guns were found in the mobile home, which was adjacent to the sheds that served as amphetamine labs. There was evidence that a drug transaction took place in the mobile home and that Vickie Haren counted drug proceeds there. Vickie Haren retrieved the guns from the sheriff's office after Richard Haren pleaded guilty to being a felon in possession of firearms. She also testified at the sentencing hearing that she believed one of the guns was a nine millimeter handgun, which is not typically used for hunting. We cannot say the district court erred in finding that the guns were connected with Vickie Haren's offense. See United States v. Streeter, 907 F.2d 781, 792 (8th Cir.1990) (unloaded guns were found on ground floor, either hidden or encased, and drugs were hidden in attic); Luster, 896 F.2d at 1128-29 (unloaded rifle was seen on the living room floor during several drug transactions).
 
 
 34
 Second, Vickie Haren claims the court improperly calculated the amount of amphetamine to be used in her base offense level. Alford Hart testified that he saw Richard and Vickie Haren counting what appeared to be $10,000 to $20,000. Hart speculated that this money was drug proceeds and the district court converted it into 448 grams of amphetamine for sentencing purposes. This court has held that certain assets associated with drug activity can be converted into quantities of drugs for sentencing. United States v. Watts, 950 F.2d 508, 514 (8th Cir.1991) (citing United States v. Gerante, 891 F.2d 364, 368-69 (1st Cir.1989)). Vickie Haren does not challenge the ability of the court to convert money into drugs, nor does she challenge the court's method of calculating the quantity. Instead, she claims the evidence was insufficient to establish the money was drug money she had "earned." Section 6A1.3(a) of the United States Sentencing Guidelines requires only that "information ha[ve] sufficient indicia of reliability to support its probable accuracy." The district court, based on testimony at trial, considered the money in question to be associated with drug activity. We cannot say that finding is clearly erroneous.
 
 
 35
 Third, Vickie Haren contends she was only a minor participant in the criminal activity, and fourth, she claims her criminal history was improperly calculated. We cannot say the district court clearly erred in finding Vickie Haren to be more than a minor participant, and further, it did not err in calculating her criminal history level.
 
 
 36
 Finally, Vickie Haren claims that the sentencing report recommended a departure from the guidelines because the criminal history level may overstate the seriousness of her criminal past. The district court refused to depart from the guidelines. We have consistently held that refusal to depart from the guidelines is generally not reviewable. United States v. Evidente, 894 F.2d 1000, 1004 (8th Cir.), cert. denied, 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990).
 
 2. Richard Haren
 
 37
 Richard Haren claims the district court improperly relied on hearsay evidence at the sentencing hearing to establish the amount of amphetamine involved. At that hearing, the court heard testimony from a DEA agent and chemist regarding an amount of amphetamine oil found at Haren's farm. The chemist testified that the oil would produce 4231 grams of amphetamine. Based on this evidence and trial testimony,[4] the district court concluded that Haren had been involved with over 5 kilograms of amphetamine.
 
 
 38
 Richard Haren relies on United States v. Fortier, 911 F.2d 100 (8th Cir.1990), for the proposition that hearsay evidence cannot be used at the sentencing hearing to enhance a sentence.[5] In Fortier, the district court enhanced the defendant's sentence exclusively because of information contained in the Presentence Report. We found the evidence to be hearsay and its use at the sentence hearing deprived the defendant of his sixth amendment right to confront the witnesses against him. Here, however, the district court heard testimony from a DEA agent and chemist at the hearing. This evidence was not hearsay and, therefore, Fortier does not apply. We find the district court's calculation of the drug quantity was not clearly erroneous.
 
 
 39
 Richard Haren also claims his sentence was improperly enhanced because he possessed firearms. Haren does not contend that he did not possess the guns, but rather argues that the court erred in finding the guns were involved with either of his offenses. Richard Haren manufactured amphetamine, led a conspiracy to distribute amphetamine, and kept several guns at the "home base" of his drug operation. We cannot say the court's finding is clearly erroneous.
 
 3. Sebastian Alaniz
 
 40
 Sebastian Alaniz contends the district court improperly calculated the amount of amphetamine involved in his offense. The court found that Alaniz had been involved with at least 2 kilograms (approximately 4.4 pounds) of amphetamine. Testimony revealed that Alaniz often dealt in ounce and half-ounce amounts, sometimes received half-pound amounts, and once received two pounds from Richard Haren. This provides an adequate ground for the district court to use an amount of 2 kilograms in sentencing Alaniz.
 
 
 41
 Alaniz also argues that the district court improperly refused to depart from the sentencing guidelines due to his diminished capacity caused by his addiction to amphetamines. The district court's decision is not reviewable. United States v. Laird, 948 F.2d 444, 447 (8th Cir.1991) (quoting Evidente, 894 F.2d at 1004).
 
 III. CONCLUSION
 
 42
 Accordingly, we affirm the convictions of all the appellants and affirm the sentences of Richard Haren, Vickie Haren, and Sebastian Alaniz. Doyle Hughes did not appeal his sentence.
 
 
 
 [1]
 The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas
 
 
 [2]
 The Honorable Beverly R. Stites, United States Magistrate Judge for the Western District of Arkansas
 
 
 [3]
 Haren relies on a recent Arkansas Supreme Court decision for the proposition that there is an actual conflict of interest even when a lawyer might have learned something that would prejudice his present or former client. See First Am. Carriers, Inc. v. Kroger Co., 302 Ark. 86, 787 S.W.2d 669 (1990) (where two attorneys in the same law firm briefly, but simultaneously, represented adverse parties in the same lawsuit, disqualification of the law firm was appropriate). This decision, however, does not control our disposition of the present case. Here, the Harens chose the same counsel, were advised by the court of the possible conflict, and after consultation decided to proceed with counsel Davis representing Richard Haren
 
 
 [4]
 Haren claims the district court improperly relied on its recollection of the testimony at trial rather than referring to the record. This claim is without merit. See Johnson, 925 F.2d at 1118 (citing United States v. Lowrimore, 923 F.2d 590, 594 (8th Cir.1991))
 
 
 [5]
 The holding in Fortier has recently been called into question. We have granted a rehearing en banc in United States v. Wise, 923 F.2d 86, reh'g granted, 923 F.2d 86 (8th Cir.1991), and may there deal with the validity of Fortier