**Filed 2/13/96**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JOSEPH L. VILLANUEVA,

        Defendant - Appellant.

No. 95-1292

(D. Colorado)

(D.C. No. 95-CR-83-1)

---

## ORDER AND JUDGMENT[*]

---

Before **ANDERSON, BARRETT** and **LOGAN,** Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34 (a); 10th Cir. R. 34.1.9. This cause is therefore ordered submitted without oral argument.

Defendant Joseph Louis Villanueva appeals the sentence imposed following his plea of guilty to one count of armed bank robbery. We affirm.

## BACKGROUND

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Both parties stipulated to the following facts: On February 13, 1995, Mr. Villanueva stole a car and drove it to the Colorado National Bank branch in Littleton, Colorado. As he entered the bank, he carried with him, tucked into the waistband of his pants and concealed underneath his shirt, a replica of an 1851 Colt black-powder revolver. The gun was in fact inoperable, because a cardboard tube filled the space where the cylinder would be.

Mr. Villanueva approached bank teller Andrea States, and, with his nose and mouth covered with a bandanna, said "Come on, you know what to do." R. Vol. 1, Tab 2, at 2-3. When Ms. States reached for her alarm button, Mr. Villanueva said, "Don't do that," and gestured toward the waistband of his pants. Id. at 3. Ms. States felt that the statement and gesture indicated that Mr. Villanueva had a weapon and was threatening her. Id. When Mr. Villanueva demanded her "hundreds and fifties," Ms. States gave him $3600. Id. He was apprehended by the police as he drove away from the bank, and was taken into the custody of the FBI. He confessed to stealing the car and robbing the bank.

Mr. Villanueva pled guilty to the one count indictment charging him with armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). The parties stipulated that the applicable guideline was United States Sentencing Commission, Guidelines Manual, §2B3.1, with a base offense level of 20. There was a two-level increase pursuant to §2B3.1(b)(1) because the property of a financial institution was taken. The parties

disagree on the issue before us: whether the gun replica was a "firearm" as defined in the Application Notes to §1B1.1, thereby warranting a five-level increase in the base offense level under USSG §2B3.1(b)(2)(C), or whether it was a "dangerous weapon," thereby warranting a three-level increase under USSG §2B3.1(b)(2)(E). The district court held a sentencing hearing on the matter, and ultimately concluded that the replica was a "firearm." The court therefore increased Mr. Villanueva's base offense level by five levels and, after granting a three-level decrease for acceptance of responsibility, arrived at a total offense level of 24. Because Mr. Villanueva's criminal history category was III, his sentencing range was 63 to 78 months. The district court sentenced him to 63 months imprisonment, with five years of supervised release. Mr. Villanueva appeals his sentence, arguing that the court erred in determining that the replica was a firearm for sentencing purposes.

**DISCUSSION**

We review de novo the application of the sentencing guidelines. United States v. McKneely, 69 F.3d 1067, 1078 (10th Cir. 1995). Mr. Villanueva pled guilty to armed bank robbery under 18 U.S.C. § 2113(a) and (d). Section 2113(d) addresses robberies in which the robber "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. § 2113(d). The firearms statutes, 18 U.S.C. §§ 921-930, define the term "firearm" as follows:

The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(3). The term "antique firearm" is defined as follows:

The term "antique firearm" means--
(A) any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; and
(B) any replica of any firearm described in subparagraph (A) if such replica --
(i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or
(ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

18 U.S.C. § 921(16). Both parties agree that, under section 921's definition of a "firearm," the weapon Mr. Villanueva carried would not be considered a firearm, because it fits the definition of an "antique firearm" under § 921(16)(B).

The sentencing guideline applicable to robberies, USSG §2B3.1, includes among its special offense characteristics a five-level increase in the base offense level if a firearm is "brandished, displayed, or possessed," and a three-level increase if a dangerous weapon is "brandished, displayed, or possessed." USSG §2B3.1(b)(2). The Application Notes to that guideline specify that "firearm" and "dangerous weapon" are "defined in the Commentary to §1B1.1 (Application Instructions)." USSG §2B3.1, comment. (n.1). The Application Notes to USSG §1B1.1, in turn, define "firearm" as follows:

- 4 -

(i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (ii) the frame or receiver of any such weapon; (iii) any firearm muffler or silencer; or (iv) any destructive device. A weapon, commonly known as a "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm.

USSG §1B1.1, comment. (n.1(e)). There is no exception for antique firearms.

The district court, after observing that it was a "very close question," concluded that Mr. Villanueva's weapon was a firearm for sentencing purposes, stating:

The term "dangerous weapon" in 18 U.S.C. 2113(d) is in my view generic. The term "firearm" in the guideline is specific. Whether this particular instrument is a dangerous weapon as defined by the guideline or a firearm as defined by the guideline, that distinction is not a predicate for the underlying offense of bank robbery under 2113(d).

. . . .

And I conclude that Congress has delegated to the United States Sentencing Commission authority to make the definition [of] a firearm that it has.

R. Vol. 2, at 20-21. Thus, the district court held that the guideline definition of a firearm was valid, notwithstanding that the firearms statute did not include an antique firearm like Mr. Villanueva's in its definition of a firearm.

On appeal, Mr. Villanueva appears to take a slightly different approach than he did before the district court, where he argued that the statutory definition implicitly overruled the sentencing guideline definition. He now argues, relying upon a Fourth Circuit case, United States v. Mahler, 891 F.2d 75, 76-77 (4th Cir. 1989), that the gun should be considered a dangerous weapon, not a firearm, because it was a replica. He also argues that the replica revolver should not be considered a firearm "because of its obviously

inoperable nature." Appellant's Br. at 10. He relies upon an Eighth Circuit case, <u>United States v. Luster</u>, 896 F.2d 1122 (8th Cir. 1990), in support of this latter argument. We reject both arguments.

The court in <u>Mahler</u> observed that "[a] reading of the Sentencing Guidelines discloses no reference to a handgun replica," <u>Mahler</u>, 891 F.2d at 77, and that the replica in <u>Mahler</u> did not meet the guideline definition for a firearm or dangerous weapon.[1] In this case, Bureau of Alcohol, Tobacco and Firearms Special Agent Phillip Miller testified at Mr. Villanueva's sentencing hearing that the weapon in question met the guideline definition of a firearm as the "frame or receiver of" a weapon. R. Vol. 2, at 7. Thus, <u>Mahler</u> provides no assistance to Mr. Villanueva, because the particular weapon Mr. Villanueva carried *does* meet the guideline definition for a firearm.

Mr. Villanueva next asks us to follow the Eighth Circuit in <u>Luster</u>, and hold that an "obviously inoperable" weapon such as that carried by Mr. Villanueva should be treated as a dangerous weapon, not a firearm. The court in <u>Luster</u> followed <u>United States v. Burke</u>, 888 F.2d 862, 869 (D.C. Cir. 1989), which held that the guideline definition of a firearm included "inoperable as well as operable firearms." <u>Luster</u> agreed with <u>Burke</u> "that the inoperability of the firearm should not bar a 2D1.1(b) adjustment, provided that

___

[1]The court went on to analogize the replica to an unloaded gun, and held that possession of a replica justified an upward departure "by the same amount as if the weapon were a firearm under the definition set forth in the guidelines." <u>Mahler</u>, 891 F.2d at 77.

the firearm at the time of the offense did not clearly appear inoperable." Luster, 896 F.2d at 1128-29. Thus, Luster qualified the Burke holding by stating that firearms which "clearly appear inoperable" are not firearms under the guidelines.

We need not decide whether we should make any exception for "clearly inoperable" weapons, however that term might be defined. In this case, the weapon was not actually displayed; rather, Mr. Villanueva implicitly referred to it, thereby leading his victim, Ms. States, to believe that he carried a weapon. Even if it was "obviously inoperable," its operability or inoperability was not apparent to the victim of the crime.[2] Furthermore, while Special Agent Miller testified that the weapon was inoperable, and the government does not seriously dispute its inoperability, there were no findings on the obviousness of the weapon's inoperability.

For the foregoing reasons, Mr. Villanueva's sentence is AFFIRMED. The mandate shall issue forthwith.

---

[2]The rationale for concluding that inoperable or unloaded firearms should be included in the guideline definition is that the mere "display of a gun instills fear in the average citizen" and "as a consequence . . . creates an immediate danger that a violent response will ensue." McLaughlin v. United States, 476 U.S. 16, 17-18 (1986); see United States v. Paulk, 917 F.2d 879, 882 (5th Cir. 1990); Burke, 888 F.2d at 869. Thus, its impact on the victim is critical; if the victim is led to believe that the defendant carries a weapon, but the victim does not actually see the weapon, then the defendant should not be able to take advantage of any "obvious" inoperability of the weapon.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge